IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **RED ROCK ANALYTICS, LLC,** | Civil Action No. 6:21-cv-346-ADA |
| Plaintiff, | |
| v. | **Jury Trial Requested** |
| **APPLE INC.,** **QUALCOMM, INC.** | |
| Defendants. | |

# RED ROCK ANALYTICS, LLC'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Red Rock Analytics, LLC ("Red Rock" or "Plaintiff") hereby submits this First Amended Complaint for patent infringement against Defendants Apple Inc. ("Apple") and Qualcomm, Inc. ("Qualcomm") (collectively "Defendants").

## THE PARTIES

1. Plaintiff Red Rock is a limited liability company existing under the laws of Florida with its principal place of business at 5100 N. Ocean Blvd. #1011, Lauderdale by the Sea, FL 33308.

2. Red Rock is informed and believes, and on that basis alleges, that Defendant Apple is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple may be served with process through its registered agent, CT Corporation System, 1999 Bryan St. Ste. 900, Dallas, TX 75201-3136.

3. Red Rock is informed and believes, and on that basis alleges, that Defendant Qualcomm is a California corporation with its principal place of business at 5775 Morehouse Dr., San Diego, CA 92121. Qualcomm may be served with process through its registered agent, Prentice Hall Corp. System, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA.

4. A true and correct copy of the patent asserted in this lawsuit, United States Patent No. 7,346,313 ("the '313 Patent") together with its certificates of correction are attached as Exhibit A.

5. Red Rock's Preliminary Infringement Claim Chart for U.S. Patent No. 7,346,313 is attached as Exhibit B.

6. Red Rock's prior Infringement Contention Claim Chart, which Red Rock served on Apple in Eastern District of Texas Civil Action No. 2:19-cv-00117-JRG ("*Apple I*") on June 17, 2019, is attached as Exhibit C.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

8. The Court has personal jurisdiction over Defendant Apple, in part because Defendant Apple has minimum contacts within the State of Texas; Defendant Apple has purposefully availed itself of the privileges of conducting business in the State of Texas; Defendant Apple regularly conducts business within the State of Texas; and Plaintiff's cause of action arises directly from Defendant Apple's business contacts and other activities in the State of Texas, including at least by virtue of Defendant Apple's infringing systems, devices, and methods, which are at least sold, practiced, and/or used in the State of Texas. Further, this Court has general jurisdiction over Defendant Apple, in part due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Defendant Apple is subject to the Court's jurisdiction, in part because Defendant Apple has committed patent infringement in the State of Texas. Defendant

Apple has regular and established places of business in this district and regularly sells, markets, and supports its products and services within this judicial district. Defendant Apple is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and judicial district, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

9.   The Court has personal jurisdiction over Defendant Qualcomm, in part because Defendant Qualcomm has minimum contacts within the State of Texas; Defendant Qualcomm has purposefully availed itself of the privileges of conducting business in the State of Texas; Defendant Qualcomm regularly conducts business within the State of Texas; and Plaintiff's cause of action arises directly from Defendant Qualcomm's business contacts and other activities in the State of Texas, including at least by virtue of Defendant Qualcomm's infringing systems, devices, and methods, which are at least sold, practiced, and/or used in the State of Texas. Further, this Court has general jurisdiction over Defendant Qualcomm, in part due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Defendant Qualcomm is subject to the Court's jurisdiction, in part because Defendant Qualcomm has committed patent infringement in the State of Texas. Defendant Qualcomm has regular and established places of business in this district and regularly sells, markets, and supports its products and services within this judicial district. Defendant Qualcomm is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and judicial district, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in

other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

10. Venue is proper in this federal district as to Apple pursuant to 28 U.S.C. §§1391(b)-(c) and 1400(b). Without limitation, Defendant Apple has regular and established places of business in this District, and in Texas, and at least some of its infringement of the patent-in-suit occurs in this District, and in Texas.

11. Venue is proper in this federal district as to Qualcomm pursuant to 28 U.S.C. §§1391(b)-(c) and 1400(b). Without limitation, Defendant Qualcomm has regular and established places of business in this District, and in Texas, and at least some of its infringement of the patent-in-suit occurs in this District, and in Texas.

12. Without limitation, venue is proper in this District as to Apple because Defendant Apple has physical places from which its business is conducted within this District. Plaintiff is informed and believes, and on that basis alleges, that Apple maintains an office at 12545 Riata Vista Cir., Austin, TX 78727. Plaintiff is further informed and believes, and on that basis alleges, that Apple operates a number of retail stores in this District through which it transacts business. This includes Apple retail stores located at 3121 Palm Way, Austin, TX 78758 and 2901 S. Capital of Texas Hwy, Austin TX 78746. *See Find Locations*, Apple, https://locate.apple.com/sales/ (last visited Mar. 25, 2021). The business conducted at such places is steady, uniform, orderly, and/or methodical, and is settled and not transient, including, but not limited to, distribution, sales, and/or offers for sale of infringing products. Further, on information and belief, Defendant Apple is subject to venue in this District, in part because Defendant Apple has committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Defendant Apple infringes the patent-in-suit by the infringing acts described herein in this District. Further, Defendant Apple solicits

and induces customers/users in this District, including via its stores and website at www.apple.com. On information and belief, Defendant Apple has customers/users who are residents of this District and who purchase, acquire, and/or use Defendant Apple's infringing products in this District.

13. Without limitation, venue is proper in this District as to Qualcomm because Defendant Qualcomm has physical places from which its business is conducted within this District. Plaintiff is informed and believes, and on that basis alleges, that Qualcomm maintains an office at 9600 N. Mopac Expy, Stonebridge Plaza II, Ste 900, Austin, TX 78759. The business conducted here is steady, uniform, orderly, and/or methodical, and is settled and not transient, including, but not limited to, distribution, sales, and/or offers for sale of infringing products. Further, on information and belief, Defendant Qualcomm is subject to venue in this District, in part because Defendant Qualcomm has committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Defendant Qualcomm infringes the patent-in-suit by the infringing acts described herein in this District. On information and belief, Defendant Qualcomm has customers/users who are residents of this District and who purchase, acquire, and/or use Defendant Qualcomm's infringing products in this District.

## JOINDER OF DEFENDANTS

14. Joinder of accused infringers Apple and Qualcomm as defendants in this lawsuit is proper under 35 U.S.C. § 299.

15. Red Rock asserts that (a) it is entitled to relief against Defendants jointly, severally, and/or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, and (b) questions of fact common to both Defendants will arise in the action.

16. Plaintiff alleges that Apple and Qualcomm manufacture and/or sell and/or offer for sale and/or import the same products and processes accused in this action concerning Qualcomm's 5G Infringing Products, including at least the SDR865, SDX55M, and/or SMR526, which are integrated into and sold as part of Apple's products, including at least the iPhone 12, iPhone 12 mini, iPhone 12 Pro, and iPhone 12 Pro Max.

### INFRINGEMENT OF U.S. PATENT NO. 7,346,313 BY APPLE

17. On March 18, 2008, United States Patent No. 7,346,313 was duly and legally issued for inventions entitled "Calibration of I-Q Balance in Transceivers." Red Rock was assigned the '313 Patent and continues to hold all rights and interest in the '313 Patent.

18. The '313 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

19. On information and belief and pursuant to 35 U.S.C. § 271(a), Apple has directly infringed and continues to directly infringe numerous claims of the '313 Patent, including at least claims 7, 8, 11, 12, 15, 16, 17, 18, 21, 22, 23, 26, 27, 30, 32, 33, 34, 37, 44, 45, 48, 49, 52, 53, 54, 55, 58, 59, 60, 63, 64, 67, 69, 70, 71, and 74 by its manufacture, use, sale, importation, and/or offer for sale of products (*e.g.*, computers, cellular phones, tablets, watches) that include 5G wireless transceivers (the "Apple Infringing Products" or the "Apple Accused Products"). The Apple Infringing Products include the iPhone 12, iPhone 12 mini, iPhone 12 Pro, and iPhone 12 Pro Max. Based on Apple's public statements and third party analyses of Apple's products, the Apple Infringing Products include, for example, 5G wireless transceivers made by Qualcomm Inc. that comply in whole or in part with 3GPP release 15 and/or later releases. These 5G wireless transceivers include Qualcomm's SDR865, SDX55M, and/or SMR526. On the basis of information and belief, the 5G wireless transceivers in the Apple Infringing Products infringe the systems and methods claimed by the '313 Patent.

20. In this lawsuit, Red Rock does not accuse Apple of infringement with respect to any IEEE 802.11 transceivers in the Apple Infringing Products.

21. Red Rock hereby incorporates by reference Exhibit B to this Complaint. Exhibit B sets forth additional evidence and allegations supporting Red Rock's Patent Infringement Claims against Apple.

22. Defendant Apple has had knowledge of the '313 Patent at least since April 18, 2019. On that date, Apple was served with a copy of Red Rock's complaint in Eastern District of Texas Civil Action No. 2:19-cv-00117-JRG ("*Apple I*"). A copy of the '313 Patent was attached thereto.

23. *Apple I* was dismissed on February 8, 2020. *Apple I* at Dkt. 76. This dismissal was the result of a settlement, and the dismissal was jointly requested by the parties. *See id.* at Dkt. 75.

24. In the *Apple I* lawsuit, Red Rock accused of infringement Apple devices that used IEEE 802.11n and/or 802.11ac wireless transceivers designed and made by Broadcom Inc. (the "*Apple I* Accused Products"). The infringement claims asserted by Red Rock in *Apple I* were based on functionality in those Broadcom 802.11 chips, and no Qualcomm chips were implicated in *Apple I*. No devices with 5G wireless transceivers were accused of infringement in *Apple I*. The Apple Infringing Products that are accused of infringement in this lawsuit (*e.g.* iPhone 12, iPhone 12 mini, iPhone 12 Pro, and iPhone 12 Pro Max) were not accused of infringement in *Apple I*.

25. The Apple Infringing Products accused in this lawsuit did not exist on or before February of 2020. The Apple Infringing Products were first publicly announced on or about October 23, 2020. Accordingly, Red Rock could not have brought infringement claims against the Apple Infringing Products in the *Apple I* lawsuit.

26. The *Apple I* settlement agreement did not grant Apple a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit.

27. Although both sets of products infringe the '313 Patent, the Apple Infringing Products accused in this lawsuit are materially different from the *Apple I* Accused Products. These differences are related to the limitations of the asserted '313 Patent and these differences are relevant to the infringement inquiry. Examples of such differences include the following:

   a. The *Apple I* Accused Products were accused of infringement based on functionality found in IEEE 802.11n and/or 802.11ac transceivers designed and made by Broadcom Inc. The Apple Infringing Products in this case are accused of infringement based on functionality found in 5G wireless transceivers made by Qualcomm. These 5G wireless transceivers are not designed or made by Broadcom, nor are any Broadcom 802.11 transceivers implicated in this case.

   b. The Apple Infringing Products differ from the *Apple I* Accused Products with respect to the "transmit chain" limitations of the asserted claims. The Apple Infringing Products have a different number of transmit chains than the *Apple I* Accused Products. The Apple Infringing Products' transmit chains are designed to operate at different frequencies than the *Apple I* Accused Products' transmit chains. The transmit chains in the Apple Infringing Products use different baseband-to-RF conversion structures than the transmit chains in the *Apple I* Accused Products. The baseband I-Q amplification structures found in the transmit chains of the Apple Infringing Products differ from the baseband I-Q amplification structures found in the transmit chains of the *Apple I* Accused Products in one or more material ways, including position in the chain, gain, linearity, and/or frequency response.

c. The Apple Infringing Products differ from the *Apple I* Accused Products with respect to the "receive chain" limitations of the asserted claims. The Apple Infringing Products have a different number of receive chains than the *Apple I* Accused Products. The Apple Infringing Products' receive chains are designed to operate at different frequencies than the *Apple I* Accused Products' receive chains. The receive chains in the Apple Infringing Products use different RF-to-baseband conversion structures than the receive chains in the *Apple I* Accused Products. The baseband I-Q amplification structures found in the receive chains of the Apple Infringing Products differ from the baseband I-Q amplification structures found in the receive chains of the *Apple I* Accused Products in one or more material ways, including position in the chain, gain, linearity, and/or frequency response.

d. The Apple Infringing Products differ from the *Apple I* Accused Products with respect to the "processor" limitations of the asserted claims. Specifically, the *Apple I* Accused Products' processors differ from the Apple Infringing Products' processors in one or more material ways, including number of cores, number of threads, power consumption, memory, and/or clock speed. The *Apple I* Accused Products' processors execute different source code than the Apple Infringing Products' processors.

e. The infringement contentions Red Rock served in *Apple I* are attached as Exhibit C. Additional differences between the Apple Infringing Products and the *Apple I* Accused Products are apparent from a comparison of Exhibit B to this Amended Complaint and Exhibit C to this Amended Complaint. Those

documents cite completely different evidence for each asserted claim limitation. The fact that Red Rock cited completely different evidence demonstrates that the Apple Infringing Products differ from the *Apple I* Accused Products with respect to each of the limitations of the asserted claims of the '313 Patent and these differences are relevant to the infringement inquiry.

28. Apple knew that its conduct amounted to infringement of the '313 Patent. As alleged above, Apple knew of the '313 Patent and possessed a copy of it. Apple also knew that the 5G wireless transceivers in the Apple Infringing Products infringe the systems and methods claimed by the '313 Patent because, on information and belief, Apple possessed documents, source code, know-how, and other sources of information describing how these 5G wireless transceivers operate and how they perform I-Q gain imbalance calibration. Furthermore, Apple knew of the minimum EVM and/or Rx sensitivity requirements specified by the 5G standard and Apple knew that there are no commercially acceptable non-infringing alternatives to the '313 Patent invention that would enable its Apple Infringing Products to meet those minimum EVM and/or Rx sensitivity requirements.

29. Apple knew that it did not have a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit because Apple possessed a copy of the settlement agreement entered in connection with *Apple I*. Apple knew that the dismissal of the *Apple I* lawsuit did not operate as an adjudication of non-infringement with respect to the Apple Infringing Products because those products did not exist in February 2020 and because Apple knew the Apple Infringing Products differ from its *Apple I* Accused Products and that these differences are related to the limitations of the asserted '313 Patent.

30. On information and belief, Apple possessed documents, source code, know-how, and other sources of information describing how its Apple Infringing Products perform I-Q gain imbalance calibration. Apple also possessed documents, source code, know-how, and other sources of information describing how its *Apple I* Accused Products perform I-Q gain imbalance calibration. Apple therefore knew that its Apple Infringing Products differ from its *Apple I* Accused Products and that these differences are related to the limitations of the asserted '313 Patent.

31. Defendant Apple has knowledge of the '313 Patent and indirectly infringes at least claims 7, 8, 11, 12, 15, 16, 17, 18, 21, 22, 23, 26, 27, 30, 32, 33, 34, 37, 44, 45, 48, 49, 52, 53, 54, 55, 58, 59, 60, 63, 64, 67, 69, 70, 71, and 74 of the '313 Patent by active inducement under 35 U.S.C. § 271(b) and/or § 271(f). Defendant Apple has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import Infringing Products. Defendant Apple has done so by acts including but not limited to selling Infringing Products to its customers; marketing Infringing Products; and providing instructions, technical support, and other support and encouragement (available via https://support.apple.com/, for instance) for the use of Infringing Products. For example, Apple maintains a web page where it specifically instructs its customers how to infringe by enabling and using the 5G wireless transceivers in the Apple Infringing Products. *See* https://support.apple.com/en-us/HT211828 ("Use 5G with your iPhone"). Such conduct by Defendant Apple was intended to and actually resulted in direct infringement, including the making, using, selling, offering for sale, and/or importation of Infringing Products in the United States.

32. The acts of infringement by Defendant Apple have caused damage to Red Rock, and Red Rock is entitled to recover from Defendant Apple the damages sustained by Red Rock as a result of Defendant Apple's wrongful acts in an amount subject to proof at trial. The infringement of Red

Rock's exclusive rights under the '313 Patent by Defendant Apple has damaged and will continue to damage Red Rock, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

33. Apple's aforementioned actions have been, and continue to be, committed in a knowing, willful, and egregious manner and constitute willful infringement of the '313 Patent. As alleged above, Apple knew, or should have known, that its conduct amounted to infringement of the '313 Patent. Despite this knowledge, Apple continued to willfully and egregiously infringe the '313 Patent.

## **INFRINGEMENT OF U.S. PATENT NO. 7,346,313 BY QUALCOMM**

34. On information and belief and pursuant to 35 U.S.C. § 271(a), Qualcomm has directly infringed and continues to directly infringe numerous claims of the '313 Patent, including at least claims 7, 8, 11, 12, 15, 16, 17, 18, 21, 22, 23, 26, 27, 30, 32, 33, 34, 37, 44, 45, 48, 49, 52, 53, 54, 55, 58, 59, 60, 63, 64, 67, 69, 70, 71, and 74 by its manufacture, use, sale, importation, and/or offer for sale of 5G wireless transceivers and Wi-Fi 6 wireless transceivers (the "Qualcomm Infringing Products" or the "Qualcomm Accused Products"). Based on Qualcomm's public statements and third party analyses of Qualcomm's products, the Qualcomm Infringing Products include, for example, 5G wireless transceivers that comply in whole or in part with 3GPP release 15 and/or later releases. The Qualcomm Infringing Products also include, for example, Wi-Fi 6 wireless transceivers that comply in whole or in part with IEEE 802.11ax and/or later versions of IEEE 802.11. These 5G and/or Wi-Fi 6 wireless transceivers include the Qualcomm products listed in Exhibit B. On the basis of information and belief, the 5G and Wi-Fi 6 wireless transceivers in the Qualcomm Infringing Products infringe the systems and methods claimed by the '313 Patent.

35. Red Rock hereby incorporates by reference Exhibit B to this Complaint. Exhibit B sets forth additional evidence and allegations supporting Red Rock's Patent Infringement Claims against Qualcomm.

36. Qualcomm has had knowledge of the '313 Patent since at least November 7, 2008 when Qualcomm received an International Search Report in connection with Qualcomm's prosecution of PCT/US2008/050152. That Notice cited U.S. App. No. 2003/0223480 to Cafarella, which had already issued as U.S. Pat. No. 7,346,313 on March 18, 2008.

37. Qualcomm had further knowledge of the '313 Patent since at least October 16, 2009 when Qualcomm received a Notice of References Cited by Examiner in connection with Qualcomm's prosecution of U.S. App. No. 11/341,184. That Notice cited U.S. App. No. 2003/0223480 to Cafarella, which had already issued as U.S. Pat. No. 7,346,313 on March 18, 2008.

38. Qualcomm had further knowledge of the '313 Patent as of at least March 16, 2011 when Qualcomm submitted an Information Disclosure Statement in connection with its prosecution of U.S. App. No. 11/968,644. That Statement cited U.S. App. No. 2003/0223480 to Cafarella, which had already issued as U.S. Pat. No. 7,346,313 on March 18, 2008.

39. Qualcomm had further knowledge of the '313 Patent as of at least August 1, 2017, when Red Rock served Qualcomm with a subpoena in connection with Eastern District of Texas Civil Action No. 2:17-cv-00101-RWS-RSP. That subpoena specifically referenced "U.S. Patent No. 7,346,313" and sought discovery about it.

40. Defendant Qualcomm has knowledge of the '313 Patent and indirectly infringes at least claims 7, 8, 11, 12, 15, 16, 17, 18, 21, 22, 23, 26, 27, 30, 32, 33, 34, 37, 44, 45, 48, 49, 52, 53, 54, 55, 58, 59, 60, 63, 64, 67, 69, 70, 71, and 74 of the '313 Patent by active inducement under 35 U.S.C. § 271(b) and/or § 271(f). Defendant Qualcomm has induced, caused, urged, encouraged,

aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import Infringing Products. Defendant Qualcomm has done so by acts including but not limited to selling Infringing Products to its customers; marketing Infringing Products; and providing instructions, technical support, and other support and encouragement for the use of Infringing Products. Such conduct by Defendant Qualcomm was intended to and actually resulted in direct infringement, including the making, using, selling, offering for sale, and/or importation of Infringing Products in the United States.

41. The acts of infringement by Defendant Qualcomm have caused damage to Red Rock, and Red Rock is entitled to recover from Defendant Qualcomm the damages sustained by Red Rock as a result of Defendant Qualcomm's wrongful acts in an amount subject to proof at trial. The infringement of Red Rock's exclusive rights under the '313 Patent by Defendant Qualcomm has damaged and will continue to damage Red Rock, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

42. Qualcomm's aforementioned actions have been, and continue to be, committed in a knowing willful, and egregious manner and constitute willful infringement of the '313 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Red Rock prays for the following relief:

43. A judgment in favor of Red Rock that Defendant Apple has infringed and is infringing, either literally and/or under the doctrine of equivalents, U.S. Patent No. 7,346,313;

44. A judgment in favor of Red Rock that Defendant Qualcomm has infringed and is infringing, either literally and/or under the doctrine of equivalents, U.S. Patent No. 7,346,313;

45. An Order permanently enjoining Defendant Apple, its respective officers, agents, employees, and those acting in privity with them, from further direct and/or indirect infringement of U.S. Patent No. 7,346,313;

46. An Order permanently enjoining Defendant Qualcomm, its respective officers, agents, employees, and those acting in privity with them, from further direct and/or indirect infringement of U.S. Patent No. 7,346,313;

47. An award of damages to Red Rock arising out of Defendant Apple's infringement of U.S. Patent No. 7,346,313, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

48. An award of damages to Red Rock arising out of Defendant Qualcomm's infringement of U.S. Patent No. 7,346,313, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

49. An award of an ongoing royalty for Defendant Apple's post-judgment infringement in an amount according to proof in the event that a permanent injunction preventing future acts of infringement is not granted;

50. An award of an ongoing royalty for Defendant Qualcomm's post-judgment infringement in an amount according to proof in the event that a permanent injunction preventing future acts of infringement is not granted;

51. A declaration that Defendant Apple's infringement was willful and an award of treble damages pursuant to 35 U.S.C. § 284;

52. A declaration that Defendant Qualcomm's infringement was willful and an award of treble damages pursuant to 35 U.S.C. § 284;

53. An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

54. Granting Red Rock its costs and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

55. Red Rock demands a trial by jury of any and all issues triable of right before a jury.

DATED: June 30, 2021

<u>*/s/ Leslie V. Payne*</u>
Leslie V. Payne (Texas Bar No. 00784736)
lpayne@hpcllp.com
Alden G. Harris (Texas Bar No. 24083138)
aharris@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr. (Texas Bar No. 00794818)
jw@wsfirm.com
Claire Abernathy Henry (Texas Bar No. 24053063)
claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone (903) 757-6400
Facsimile (903) 757-2323

S. Calvin Capshaw (Texas Bar No. 03783900)
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux (TX Bar No. 05770585)
ederieux@capshawlaw.com
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770

**ATTORNEYS FOR RED ROCK ANALYTICS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(b)(2) on June 30, 2021.

*/s/ Leslie V. Payne*
Leslie V. Payne
