**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

RED ROCK ANALYTICS, LLC,

                        Plaintiff,

      v.

APPLE INC., QUALCOMM, INC.,

                        Defendants.

Civil Action No. 6:21-cv-00346-ADA

**JURY TRIAL DEMANDED**

**PLAINTIFF RED ROCK'S RESPONSE IN OPPOSITION TO
<u>APPLE INC.'S 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

I.     INTRODUCTION—APPLE'S MOTION SHOULD BE DENIED ............................... 1

II.    LAW .................................................................................................................... 3

    A.  Rule 12(b)(6) ............................................................................................. 3

    B.  *Kessler* Doctrine ...................................................................................... 3

    C.  Willful Infringement ................................................................................. 5

    D.  Induced Infringement ............................................................................... 5

III.   ARGUMENT ....................................................................................................... 6

    A.  Apple's Motion to Dismiss under the *Kessler* Doctrine should be Denied ................. 6

        1.  Apple did Not "Prevail" in *Apple I* ............................................... 6

        2.  The Products in this Lawsuit are Not "Substantially the Same" as the *Apple I* Products ............................................................................................. 9

        3.  Apple's Incorrect Arguments ......................................................... 17

    B.  Apple's Motion to Dismiss Willful Infringement should be Denied ........................ 19

    C.  Apple's Motion to Dismiss Induced Infringement should be Denied ....................... 19

IV.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................... 3

*AVM Techs., LLC v. Intel Corp.*,
   Civil Action No. 15-33, 2017 U.S. Dist. LEXIS 65692 (D. Del. Apr. 28, 2017)........... 4, 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................... 3

*Bowlby v. City of Aberdeen*,
   681 F.3d 215 (5th Cir. 2012) ........................................................................ 3

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014) ................................................................. 3, 7

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)..................................................................................... 5

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) .................................................................... 5

*In re PersonalWeb Techs. LLC*,
   961 F.3d 1365 (Fed. Cir. 2020) ............................................. 2, 4, 5, 8, 9, 16, 18

*Innovation Scis., LLC v. HTC Corp.*,
   Civil Action No. 4:19-CV-00752, 2020 U.S. Dist. LEXIS 82079
   (E.D. Tex. May 11, 2020)......................................................................... 4, 10

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955)..................................................................................... 6

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017) ................................................................. 6, 7

*Parity Networks, LLC v. Cisco Sys.*,
   No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094 (W.D. Tex. July 26, 2019).......... 5

*SKC Kolon PI v. Kaneka Corp.*,
   No. CV 16-05948, 2017 U.S. Dist. LEXIS 182994 (C.D. Cal. Mar. 13, 2017) ............... 4, 10

*Tech. Licensing Corp. v. Thomson, Inc.*,
   738 F. Supp. 2d 1096 (E.D. Cal. 2010) ........................................................... 4

*Virnetx Inc. v. Apple Inc.*,
     No. 6:12-CV-00855-RWS, Dkt. 181 (E.D. Tex. Aug. 8, 2014) ............................................. 11

*Xiaohua Huang v. Huawei Techs. Co.*,
     787 F. App'x 723 (Fed. Cir. 2019) ........................................................................................ 4, 9

I.     **INTRODUCTION—APPLE'S MOTION SHOULD BE DENIED**

Apple bears the burden of proving both elements of its *Kessler* doctrine defense: (1) that Apple "prevail[ed] in demonstrating noninfringement" in *Apple I*[1]; and (2) that the accused products in this suit (namely, Apple iPhone 12 models with *Qualcomm 5G cellular chips* that did not even exist at the time of the prior case) are identical or "essentially the same" as the products in *Apple I* (namely, earlier iPhone models with *Broadcom 802.11n and ac Wi-Fi chips*). Red Rock's Amended Complaint[2] pleads specific facts showing that the prior *Apple I* lawsuit did not result in any finding of non-infringement (*see, e.g.* ¶¶ 23–26, 29) and attaches 167 pages of claim charts that show on a limitation-by-limitation basis why the *Apple I* accused products are not "essentially the same" as the products accused in this lawsuit. *Compare* Amd. Comp. Ex. B (Red Rock's claim chart in this lawsuit) *with* Amd. Comp. Ex. C (*Apple I* infringement contentions).

The infringement claim chart attached to the Amended Complaint (Ex. B) cites ***none*** of the same evidence as the infringement contentions from *Apple I* (Ex. C). This is because all of the accused products in this lawsuit were released after *Apple I* was dismissed. Amd. Comp. at ¶ 25. Moreover, all of the Apple products in this lawsuit are accused of infringement based on functionality found in their ***5G wireless transceivers***, which are made by ***Qualcomm*** and which did not even exist during *Apple I. Id.* at ¶ 19; *id* at Ex. C. Thus, none of the *Apple I* accused products contained 5G wireless transceivers.

Rather, the *Apple I* infringement allegations were based on ***Wi-Fi transceivers*** made exclusively by ***Broadcom***. *Id.* at ¶ 24; *id.* at Ex. B. Apple's Motion conspicuously omits that *Apple I* was solely focused on Broadcom chips, while this lawsuit is solely focused on Qualcomm chips.

---

[1] Red Rock Analytics, LLC v. Apple, Inc., No. 2:19-cv-00117-JRG (E.D. Tex.) ("*Apple I*").
[2] Dkt. 31 ("Amended Complaint" or "Amd. Comp.").

Qualcomm and Broadcom each implement the claimed "I-Q calibration" systems and methods differently, using their own proprietary circuitry, processors, and source code. *Id.* at ¶ 27. These extensive differences, which tie directly to the asserted claim limitations, can be seen by comparing the evidence in Exhibits B & C. Accordingly, Apple cannot carry its burden of proof requiring it to show that the *Apple I* accused products are "essentially the same" as the products accused in this lawsuit.

Nor can Apple meet its burden to prove it "prevail[ed] in demonstrating noninfringement" in *Apple I*. The parties settled that case before *Markman* or dispositive motion practice. While *PersonalWeb* held that a dismissal with prejudice can operate as an adjudication of noninfringement under some circumstances (*see* 961 F.3d at 1375 n.4, 1379), it also held that settling parties are "free to limit the preclusive effect of a dismissal [by] fashion[ing] their agreement in a way that makes clear any limitation*." Id.* at 1379. Apple and Red Rock fashioned their *Apple I* settlement agreement to release only products existing as of February 2020 and past products. "The *Apple I* settlement agreement did not grant Apple a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit." Amd. Comp. at ¶ 26. Accordingly, the *Apple I* dismissal has no preclusive effect on the products in this lawsuit. Apple cannot meet its burden to prove otherwise because there is no contrary evidence in the record.

In an attempt to elide these problems, Apple claims that Red Rock alleges "***all*** 802.11 transceivers and 5G transceivers operate in 'an identical or substantially similar manner' and infringe for the same reasons." Mot. at 13 (emphasis in original). Red Rock does not allege, and has never alleged, this. What Red Rock alleges is that all accused ***Qualcomm*** wireless transceivers infringe in the same or similar manner because Qualcomm re-uses the same or similar calibration

architecture in its chips. But the *Apple I* chips were made by **Broadcom**. Broadcom implements the accused circuitry and source code differently than Qualcomm does. Red Rock has never alleged that the *Apple I* Broadcom Wi-Fi chips are similar to the Qualcomm 5G chips in this lawsuit.

Apple's Motion to dismiss Red Rock's indirect and willful infringement claims rises and falls with Apple's *Kessler* arguments, and should be denied for the same reasons.

II.    **LAW**

### A.  Rule 12(b)(6)

When considering a Rule 12(b)(6) motion, the Court must assume that all well-pleaded facts are true and must view them in the light most favorable to the non-moving party. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court must then decide whether those facts state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 219 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

### B.  *Kessler* Doctrine

The *Kessler* doctrine embodies the "principle that, when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device vis-à-vis the asserted patent claims … [W]hen the devices in the first and second suits are 'essentially the same,' the 'new' product(s) also acquires the status of a noninfringing device." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014). "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020); *see also Xiaohua Huang v. Huawei Techs. Co.*, 787 F. App'x

723, 726 (Fed. Cir. 2019) ("Devices are 'essentially the same' if they are 'materially identical.'"). The *Kessler* doctrine attaches to specific ***products***, not to ***parties***. *PersonalWeb*, 961 F.3d at 1378 ("we have characterized the *Kessler* doctrine as granting a 'limited trade right' that ***attaches to the product itself***") (emphasis added).

The defendant bears the burden of proving both elements of the *Kessler* defense: (1) that the defendant "prevail[ed] in demonstrating noninfringement" in a first suit; and (2) that the accused products in the second suit are identical or "essentially the same" as the products in the first suit. *See Tech. Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096, 1102 (E.D. Cal. 2010) ("Thomson has not met its burden to show that Elantec and Gennum 'prevailed' in their prior suits"); *AVM Techs., LLC v. Intel Corp.*, Civil Action No. 15-33, 2017 U.S. Dist. LEXIS 65692, at *5 (D. Del. Apr. 28, 2017) ("it is Defendant's burden to convince me that the products are essentially the same"); *SKC Kolon PI v. Kaneka Corp.*, No. CV 16-05948, 2017 U.S. Dist. LEXIS 182994, at *9 (C.D. Cal. Mar. 13, 2017) (Defendant "has not met its burden to show that its New Processes are 'essentially the same' as the processes accused in the prior action"); *cf. Innovation Scis., LLC v. HTC Corp.*, Civil Action No. 4:19-CV-00752, 2020 U.S. Dist. LEXIS 82079, at *9 (E.D. Tex. May 11, 2020) ("Defendant has not carried its burden of showing that the differences between the First Accused Products and the Second Accused Products are merely colorable or unrelated to the limitations of the patents.").

The Federal Circuit has held that a dismissal with prejudice pursuant to a settlement can operate as "an adjudication that [Defendant] was not liable for the acts of infringement alleged" in that prior lawsuit. *See PersonalWeb*, 961 F.3d at 1378. However, such a dismissal only operates as an adjudication with respect to the specific "products as to which the manufacturer established a right not to be sued for infringement." *Id.*; *see also id.* ("the judgment in the Texas case, pursuant

to a with-prejudice dismissal, protected *Amazon's S3 product* from subsequent infringement challenges") (emphasis added). This is because the *Kessler* doctrine applies only to claims that "were brought or 'could have been brought' in the prior action." *PersonalWeb*, 961 F.3d at 1377; *see also id.* (*Kessler* doctrine applies to "conduct that the parties reasonably should expect to continue without change"). Moreover, parties to a settlement "remain free to limit the preclusive effect of a dismissal; they simply have to fashion their agreement in a way that makes clear any limitations to which they wish to agree as to the downstream effect of the dismissal." *PersonalWeb*, 961 F.3d at 1379.

### C. Willful Infringement

To claim willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys.*, No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094, at *7 (W.D. Tex. July 26, 2019).

### D. Induced Infringement

To plead a claim of induced infringement, a plaintiff must allege that "the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) (internal quotation marks omitted). Further, a plaintiff must allege the defendant engaged in "conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

III.    **ARGUMENT**

### A. Apple's Motion to Dismiss under the *Kessler* Doctrine should be Denied

Apple has wholly failed to carry its burden of proof on either prong of the *Kessler* doctrine.

1. Apple did Not "Prevail" in *Apple I*

Apple cannot carry its burden to prove that it "prevail[ed] in demonstrating noninfringement" in *Apple I*. It is undisputed that *Apple I* was dismissed as the result of a settlement (*see* Mot. at 3), and Apple did not prevail on the merits. Amd. Comp. at ¶ 23. The *Apple I* settlement and dismissal occurred before the *Markman* hearing, before expert reports were served, and before any dispositive motions had been filed. In fact, Apple did *nothing* in *Apple I* that would remotely support the proposition that it "prevail[ed] in demonstrating nonfringement." To the contrary, the evidence that was developed during *Apple I* (*e.g.*, through source code review) showed infringement.

*Mentor Graphics* is controlling. In that case, the plaintiff settled a 2006 lawsuit against defendant EVE by entering into a license and obtaining a dismissal with prejudice. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1297–98 (Fed. Cir. 2017). Under the parties' settlement agreement, EVE's license terminated when it was acquired by Synopsys on October 4, 2012. *Id.* at 1298. Plaintiff then asserted infringement claims against Synopsys in litigation, "based exclusively on acts of infringement that occurred after October 4, 2012." *Id.* The Federal Circuit held that "***EVE is not an adjudicated non-infringer; it was a willing licensee*** that was granted a license to the '176 and '531 patents, which terminated when it was acquired by Synopsys. ***Without a valid license from Mentor, it could not 'continue the same activity in which it engaged prior to the infringement allegations.' The Kessler decision does not apply***." *Id.* at 1301 (emphasis added). The Federal Circuit also observed: "In *Lawlor*, the Supreme Court instructed that a prior

judgment 'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" *Id.* at 1300 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)).

This case is like *Mentor* in that the parties' settlement agreement does not grant Apple a license, covenant, or any other rights with respect to the products in this lawsuit. The *Apple I* settlement agreement released only then-existing claims against past or present products (as of Feb. 2020) and did not cover any future claims against future products. The Amended Complaint properly pleads this: "The *Apple I* settlement agreement did not grant Apple a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit." Amd. Comp. at ¶ 26. "Without a valid license" covering the prior accused products, the dismissal cannot operate as an adjudication of non-infringement, and the "*Kessler* decision does not apply." *Mentor Graphics*, 851 F.3d at 1301.

To meet its burden, Apple would have to somehow prove that the *Apple I* settlement agreement covered the products accused in this lawsuit. But the agreement did not cover these products, and Apple cannot show otherwise. The only evidence in the record at this stage are the factual allegations in Red Rock's complaint, which must be taken as true. Amd. Comp. at ¶ 26.

Additionally, like in *Mentor*, Red Rock's claims in this lawsuit "did not even then exist and … could not possibly have been sued upon in the previous case." 851 F.3d at 1300. The accused Apple products in this lawsuit did not exist in February 2020 when *Apple I* settled. Amd. Comp. at ¶ 25. All of the accused products in this lawsuit were first announced on or after October 23, 2020. *Id*. These all-new accused products, such as the iPhone 12, are the first Apple devices to include 5G and are accused of infringing based on the operation of their Qualcomm 5G wireless transceivers. *Id.* at ¶¶ 19, 24. *Kessler*, therefore, does not apply to these accused products. *See also*

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1059 (Fed. Cir. 2014) ("Brain Life, and its predecessor MIDCO, have never accused Elekta's ERGO++ product of infringing any of the '684 patent claims. Indeed, Elekta only acquired the ERGO++ product after the MIDCO Litigation was finalized. Accordingly, the ERGO++ has never acquired the status of a noninfringing device in connection with the '684 patent. Unlike Elekta's other products, neither claim preclusion, issue preclusion, nor the *Kessler* Doctrine stand as a bar to Brain Life's current allegations of infringement regarding the ERGO++.").

Regarding the "prevailed" prong of *Kessler*, Apple cites to *PersonalWeb*, the only case in which the Federal Circuit has held that a dismissal with prejudice can (sometimes) operate as an adjudication of non-infringement. In *PersonalWeb*, the plaintiff sued Amazon in 2011, alleging Amazon's "S3" product infringed its patents. *PersonalWeb*, 961 F.3d at 1370. After the district court issued its claim construction order, the plaintiff "abandoned its claims against Amazon without reservation" and stipulated to a dismissal with prejudice. *Id.* at 1372, 1378. The plaintiff then filed lawsuits in which it "alleged that by using S3, Amazon's customers had infringed." *Id.* The Federal Circuit held that *Kessler* "is not limited to cases involving a finding of non-infringement that was necessary to the resolution of an earlier lawsuit, but extends to protect any products as to which the manufacturer established a right not to be sued for infringement. For that reason, the judgment in the Texas case, pursuant to a with-prejudice dismissal, protected Amazon's S3 product from subsequent infringement challenges." *Id.* at 1379.

The *PersonalWeb* holding is not applicable to this case for two reasons. *First*, *PersonalWeb* held that the "with-prejudice dismissal, protected Amazon's **S3 product**" that had been accused in both lawsuits. *Id.* The Federal Circuit declined to extend its holding to cover any other products, such as Amazon's CloudFront product. *See id.* at 1375 n.4. Unlike *PersonalWeb*, Red Rock does

not accuse *any* of the same products in this lawsuit that were accused in *Apple I*. All of the accused Apple products in this suit are new and were released after *Apple* I settled.

*Second*, in *PersonalWeb*, "there was no contingency attached to the with-prejudice dismissal to which PersonalWeb stipulated. PersonalWeb *abandoned its claims* against Amazon *without reservation*, explicit or implicit." *Id.* at 1378 (emphasis added). The Federal Circuit made it clear that when parties obtain a dismissal pursuant to a settlement, their settlement agreement governs the scope of any *Kessler* preclusion. "To the extent that a plaintiff wishes to settle an infringement action while preserving its rights to sue the same or other parties in the future, it can do so by *framing the dismissal agreement to preserve any such rights* that the defendant is willing to agree to. Settling parties will remain free to limit the preclusive effect of a dismissal; they simply have to *fashion their agreement in a way that makes clear any limitations* to which they wish to agree as to the downstream effect of the dismissal." *Id.* at 1379 (emphasis added).

As discussed above, Apple and Red Rock intentionally fashioned their *Apple I* settlement agreement to not extend to any future Apple products. "The *Apple I* settlement agreement did not grant Apple a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit." Amd. Comp. at ¶ 26. Because the parties fashioned their settlement agreement to exclude future products, the *Apple I* dismissal does not operate as an adjudication of non-infringement with respect to Apple products released after February 2020. Apple bears the burden of proof on this issue, so it cannot prevail.

2.  The Products in this Lawsuit are Not "Substantially the Same" as the *Apple I* Products

Apple cannot carry its burden to prove that the accused Apple products in this lawsuit are "substantially the same" as the accused products in *Apple I*. To meet this burden, Apple would need to prove that "the differences between them are merely 'colorable' or 'unrelated to the

limitations in the claim of the patent'" such that the products are "materially identical." *PersonalWeb*, 961 F.3d at 1375; *Huang*, 787 F. App'x at 726.

This is a rigorous and fact-intensive standard. Courts regularly deny *Kessler* doctrine summary judgment motions, finding that the defendant failed to meet its burden of proving the products at issue are "substantially the same." *See, e.g.*, *AVM Techs.*, 2017 U.S. Dist. LEXIS 65692, at *5 ("[I]t is Defendant's burden to convince me that the products are essentially the same … Therefore, I will deny Defendant's Motion for Summary Judgment that AVM's Infringement Claims are Barred by the *Kessler* Doctrine"). Because Apple filed a 12(b)(6) Motion rather than a summary judgment motion, Apple cannot present any evidence, which is fatal at this stage. *See SKC Kolon PI*, 2017 U.S. Dist. LEXIS 182994, at *9 ("SKPI has not met its burden to show that its New Processes are 'essentially the same' as the processes accused in the prior action … it would be premature to apply the *Kessler* Doctrine at this stage before the Court can determine the extent to which the products in the two actions are different.").

The Apple products accused in this lawsuit are plainly different from the *Apple I* products, and these differences are alleged in the Amended Complaint. All of the Apple products in this lawsuit are accused of infringement based on functionality found in their 5G wireless transceivers, which are made exclusively by Qualcomm. Amd. Comp. at ¶ 19. None of the *Apple I* accused products contained 5G wireless transceivers (which did not exist at the time), and the *Apple I* infringement allegations were based on Wi-Fi transceivers made exclusively by Broadcom. *Id.* at ¶ 24. Qualcomm and Broadcom each employ different proprietary circuitry, processors, and source code that implement the accused I-Q calibration functionality claimed in the asserted '313 Patent. *Id.* at ¶ 27; *id.* at Ex. B; *id.* at Ex. C.

These pleaded facts conclusively show that the old and new products are not "substantially the same." *See Innovation Scis., LLC v. HTC Corp.*, Civil Action No. 4:19-CV-00752, 2020 U.S. Dist. LEXIS 82079, at *9-11 (E.D. Tex. May 11, 2020) ("Plaintiff also points to specific differences between the First Accused Products and the Second Accused Products, including the fact that ***the 5G Hub does not use the same processor*** found in any of the First Accused Products and ***the fact that all of the accused products have their own circuitry*** that impacts Plaintiff's claims of infringement … These differences impact the limitations expressed in the claims and require individual and ***unique claim charts*** to prove infringement for each device.") (emphasis added); *AVM Techs.*, 2017 U.S. Dist. LEXIS 65692, at *4 ("Here, it seems clear that the products are not essentially the same. Plaintiff has pointed to substantial evidence in the record that the products in the instant case involve ***substantially different circuit elements*** and, consequently, signal timing.") (emphasis added); Ex. 1 at 5 (*Virnetx Inc. v. Apple Inc.*, No. 6:12-CV-00855-RWS, Dkt. 181 at 5 (E.D. Tex. Aug. 8, 2014)) ("The accused devices in this case are Per App VPN, iMessage, FaceTime, and VPN on Demand. Per App VPN and iMessage were not at issue in *Apple I*. FaceTime and VPN on Demand have been re-designed since the prior case. Thus, the accused features in this and the prior case are not 'essentially the same.'").

The Amended Complaint does not stop there. Red Rock gets into the gritty technical details and shows how the accused Apple products in this lawsuit differ from the *Apple I* products with respect to the limitations of the asserted '313 Patent. Amd. Comp. at ¶ 27. The amended complaint also attaches for comparison Red Rock's claim chart in this lawsuit (Amd. Comp. Ex. B) and Red Rock's *Apple I* infringement contentions (Amd. Comp. Ex. C), which provide 167 pages of evidence showing that the current products are not "substantially the same" as the prior *Apple I* products. Exhibit B and Exhibit C cite ***none*** of the same evidence. Zero. And it does not take an

engineering degree to see the plain differences between the two sets of charts. Red Rock encourages the Court to take a look. Red Rock does not have space in this Response to list all of the differences, but will present a few representative examples here.

*First*, each claim of the asserted '313 Patent includes a "transmit chain" claim element. This element recites a chain of circuitry used to modulate and transmit radio signals. Amd. Comp. Ex. A at claim 7 ("a transmit chain including: a signal generator for generating a baseband transmit signal; baseband I-Q amplification subsystem for providing baseband amplification of the baseband transmit signal; a direct-conversion subsystem for converting the baseband transmit signal to an RF transmit signal, and an RF transmit signal port"). The Amended Complaint alleges that the "Apple Infringing Products differ from the *Apple I* Accused Products with respect to the 'transmit chain' limitations of the asserted claims." Amd. Comp. at ¶ 27. These differences are directly related to the transmit chain circuitry claimed in the '313 Patent. *Id.* Below is a comparison of the relevant transmit chain circuitry, with the current accused circuitry in the Qualcomm 5G cellular transceivers in the iPhone 12 models at the top and the prior accused circuitry in the Broadcom 802.11ac and n Wi-Fi transceivers in the earlier iPhone models at the bottom:



Amd. Comp. Ex. B at 17 (depicting Qualcomm 5G transmit chain circuity in this lawsuit).



Amd. Comp. Ex. C at 6 (depicting Broadcom Wi-Fi transmit chain circuity in *Apple I* products).

These transmit chains are plainly different, as the Amended Complaint alleges. For example, the "Apple Infringing Products have a different number of transmit chains than the *Apple I* Accused Products." Amd. Comp. at ¶ 27. The figure from Exhibit B shows four transmit chains, whereas the figure from Exhibit C shows two transmit chains. Another example of a relevant difference is that the Qualcomm 5G transmit chain circuitry accused in this lawsuit is "designed to operate at different frequencies than the *Apple I* Accused Products' transmit chains" because those *Apple I* products used Broadcom Wi-Fi transceivers which operate in different frequency bands. *Id.* at ¶ 27. In part because of this frequency difference, the "transmit chains in the Apple Infringing Products use different baseband-to-RF conversion structures than the transmit chains in the *Apple I* Accused Products." *Id.* This last difference is also relevant to the "direct-conversion subsystem" claim element and the "conversion subsystem for converting the baseband transmit signal at the intermediate frequency to an RF transmit signal" claim element.

*Second*, the transmit chain claim element also has several sub-elements in the '313 Patent claims. One of these sub-elements is a "baseband I-Q amplification subsystem for providing baseband amplification of the baseband transmit signal." This is another example of a difference between the old and new products. The old *Apple I* products implemented their amplification sub-system circuitry as part of a low-pass filter structure called "WL TXLPF" whereas the Apple products accused in this lawsuit appear to implement their amplification sub-system circuitry in dedicated "adjustable gain stages." *Compare* Amd. Comp. Ex. B at 19 *with* Amd. Comp. Ex. C at 6. The Amended Complaint pleads facts that describe how these amplification structures differ: "The baseband I-Q amplification structures found in the transmit chains of the Apple Infringing Products differ from the baseband I-Q amplification structures found in the transmit chains of the

*Apple I* Accused Products in one or more material ways, including position in the chain, gain, linearity, and/or frequency response." Amd. Comp. at ¶ 27.

*Third*, each claim of the asserted '313 Patent includes a "receive chain" element. Similar to the "transmit chain," this claim element recites a chain of circuitry used for signal reception and demodulation. Amd. Comp. Ex. A at claim 7. The Amended Complaint alleges that the "Apple Infringing Products differ from the *Apple I* Accused Products with respect to the 'receive chain' limitations of the asserted claims." Amd. Comp. at ¶ 27. Like the transmit chain differences, the differences in the receive chain circuitry can be seen by comparing the two claim charts. *Compare* Amd. Comp. Ex. B at 30 *with* Amd. Comp. Ex. C at 10. Once again, these differences include the number of chains, the operating frequency, the conversion structures, and the amplification subsystems. Amd. Comp. at ¶ 27.

*Fourth*, each claim of the asserted '313 Patent includes a "processor" claim element. Amd. Comp. Ex. A at claim 7 ("a processor for processing of the baseband receive signal as required for the normal function of the transceiver"). The Amended Complaint alleges "the *Apple I* Accused Products' processors differ from the Apple Infringing Products' processors in one or more material ways, including number of cores, number of threads, power consumption, memory, and/or clock speed." Amd. Comp. at ¶ 27. Furthermore, the "*Apple I* Accused Products' processors execute different source code than the Apple Infringing Products' processors" because one processor is executing Qualcomm's proprietary source code, and the other is executing Broadcom's proprietary source code. *Id.*

*Fifth*, each claim of the asserted '313 Patent includes a "calibration cycle" claim element. Exhibits B and C show flowcharts depicting how the new and old products implement calibration

cycles in their source code. These flowcharts are different. These source code instructions include

different numbers of steps, and they perform different actions at each step, as shown:



| Amd. Comp. Ex. B at 17 (this lawsuit) | Amd. Comp. Ex. C at 25 (*Apple I*) |

Accepting Red Rock's well-pleaded facts as true, the above evidence conclusively shows that

the differences between the accused Apple products in this lawsuit and the *Apple I* products are

not "merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *PersonalWeb*,

961 F.3d at 1375. Instead, the differences are extensive and are directly related to the circuitry,

processors, and source code recited in the asserted claim limitations.

Accordingly, the Court should also deny Apple's Motion because the Amended Complaint pleads facts showing that the accused Apple products in this case are not "substantially the same" as the *Apple I* products.

3.  Apple's Incorrect Arguments

Apple makes two spurious arguments about Red Rock's Amended Complaint. *First*, Apple argues "Red Rock's Amended Complaint avers that there are no material differences between 802.11 Wi-Fi transceivers accused in *Red Rock I* and the 5G cellular transceivers accused in this case." Mot. at 11. The Amended Complaint says no such thing. Apple's misunderstanding seems to be premised on the following statement: "there are no acceptable non-infringing alternatives to the '313 Patent that would enable compliance with these [EVM] requirements [of Wi-Fi 6]." Amd. Comp. Ex. B at 13. Here, Red Rock is alleging that all Wi-Fi 6 transceivers must infringe in order to meet the EVM requirements of Wi-Fi 6. But Red Rock is ***not*** alleging that all Wi-Fi 6 transceivers infringe ***in the same way***. The fact that two devices infringe the same patent does not mean that those devices are "substantially the same" (otherwise all infringing devices would automatically be "substantially the same"). The Wi-Fi 6 standard does not specify how I-Q calibration takes place; it just specifies the level of transceiver performance required. Different chipmakers (*e.g.,* Qualcomm and Broadcom) implement different calibration systems to meet these requirements. As discussed above, Exhibits B and C show that these two companies use calibration systems that differ in material ways with respect to the asserted claim limitations. And Red Rock's infringement claims at issue here are directed at the ***5G*** (not Wi-Fi 6) transceivers in Apple's products. Also, there were no Wi-Fi 6 transceivers in *Apple I*.

Another source of Apple's confusion seems to be the following statement: "Red Rock contends that every Accused Product performs I-Q gain imbalance calibration in an identical or

substantially similar manner. Accordingly, the infringement theories and evidence disclosed in these contentions is exemplary of Red Rock's infringement theories and evidence for each and every Accused Product, irrespective of which Qualcomm Transceiver it contains." Amd. Comp. Ex. B at 3. Here, Red Rock is saying that all of the **Qualcomm** transceivers in the accused products in this lawsuit calibrate in the same or similar manner, because Qualcomm re-uses the same or similar calibration designs in its products. Red Rock is not saying that the **Broadcom** transceivers from *Apple I* calibrate in the same manner as the Qualcomm transceivers in this lawsuit (because that would not be true). Each company implements calibration differently and in a proprietary manner. As shown above, the Broadcom transceivers are materially different from the Qualcomm transceivers.

*Second*, Apple says that, although the Amended Complaint "alleges that the accused activity in this case is different from the activity accused in *Red Rock I*," this is insufficient because "Red Rock does not even attempt to allege how any of these differences is 'relevant to the infringement inquiry.'" Mot. at 13. This argument is wrong because Apple, not Red Rock, bears the burden to prove that any differences between the new and old products "are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *PersonalWeb*, 961 F.3d at 1375. And the argument is also wrong because, as discussed above, the Amended Complaint points out a multitude of specific differences that are relevant to the infringement inquiry. These are differences in structures and circuits (*e.g.* the "transmit chain," the "processor," the "calibration cycle") specified in the asserted claims and these differences appear in Red Rock's infringement claim charts (Ex. B & Ex. C). The fact that Red Rock's infringement claim charts cite completely different evidence from one another also shows that the differences are relevant to the infringement inquiry.

**B.  Apple's Motion to Dismiss Willful Infringement should be Denied**

 The Amended Complaint pleads the elements of willful infringement: (1) "Defendant Apple has had knowledge of the '313 Patent at least since April 18, 2019" when it was served in *Apple I* (Amd. Comp. at ¶ 22); (2) Apple subsequently infringed the '313 Patent (*id.* at ¶ 19); and (3) "Apple knew that its conduct amounted to infringement of the '313 Patent" (*id.* at ¶¶ 28–30, 33). These statements are supported by specific factual allegations.

Apple's Motion is premised on the argument that Apple thought it was not infringing because of the *Kessler* doctrine. Mot. at 15. Accordingly, this aspect of Apple's Motion rises and falls with its *Kessler* arguments. Moreover, the Amended Complaint addresses Apple's state of mind directly. *See, e.g.*, Amd. Comp. at ¶¶ 29–30 ("Apple knew that it did not have a license or any other rights in the '313 Patent with respect to the Apple Infringing Products accused in this lawsuit … Apple knew the Apple Infringing Products differ from its *Apple I* Accused Products and that these differences are related to the limitations of the asserted '313 Patent.").

Accordingly, the Court should deny Apple's Motion to dismiss Red Rock's willful infringement claims.

**C.  Apple's Motion to Dismiss Induced Infringement should be Denied**

The Amended Complaint pleads the elements of induced infringement: (1) "Defendant Apple has had knowledge of the '313 Patent at least since April 18, 2019" (Amd. Comp. at ¶ 22); (2) Apple's customers infringe the '313 Patent (*id.* at 31); and (3) Apple actively encourages its customers to infringe because, for example, "Apple maintains a web page where it specifically instructs its customers how to infringe by enabling and using the 5G wireless transceivers in the Apple Infringing Products" (*id.*).

Again, Apple's Motion is premised on the argument that Apple thought it was not infringing because of the *Kessler* doctrine. Mot. at 16. So, again, this aspect of Apple's Motion rises and falls with its *Kessler* arguments. And the Amended Complaint addresses Apple's state of mind directly. *See, e.g.*, Amd. Comp. at ¶¶ 29–30. The Court should deny Apple's Motion to dismiss Red Rock's induced infringement claims.

## IV.    <u>**CONCLUSION**</u>

Red Rock respectfully requests that the Court deny Apple's Motion to Dismiss.

DATED: July 28, 2021

*/s/ Alden G. Harris*
Leslie V. Payne (Texas Bar No. 00784736)
lpayne@hpcllp.com
Alden G. Harris (Texas Bar No. 24083138)
aharris@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr. (Texas Bar No. 00794818)
jw@wsfirm.com
Claire Abernathy Henry (Texas Bar No. 24053063)
claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone (903) 757-6400
Facsimile (903) 757-2323

S. Calvin Capshaw (Texas Bar No. 03783900)
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux (TX Bar No. 05770585)
ederieux@capshawlaw.com
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770

**ATTORNEYS FOR RED ROCK ANALYTICS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(b)(2) on July 28, 2021.

*/s/ Alden G. Harris*
Alden G. Harris