**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| RED ROCK ANALYTICS LLC, | |
|         Plaintiff, | Case No. 6:21-cv-00346-ADA |
|     v. | **JURY TRIAL DEMANDED** |
| APPLE INC., QUALCOMM INC. | |
|         Defendants. | |

**DEFENDANTS QUALCOMM INC. AND APPLE INC.'S OPPOSED MOTION TO**
**<u>TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

I.    STATEMENT OF FACTS .............................................................................1

      A.    Red Rock Accuses Functionality Developed in California            1

      B.    Defendants' Likely Witnesses and Documents are Located in NDCA and
            San Diego                                                          2

            1.    Qualcomm's Likely Trial Witnesses and Documents ................2

            2.    Apple's Likely Trial Witnesses and Documents .........................3

      C.    Red Rock Has No Connections to WDTX                               5

      D.    Potential Third-Party Witnesses Are Concentrated in California    5

II.   LEGAL STANDARD.......................................................................................6

III.  ARGUMENT 7

      A.    Red Rock Could Have Filed this Action in NDCA                     7

      B.    NDCA Is a Clearly More Convenient Venue than WDTX                 8

            1.    Relative Ease of Access to Sources of Proof...............................9

            2.    Availability of Compulsory Process ........................................10

            3.    Inconvenience to Willing Witnesses........................................11

            4.    All Other Practical Problems ..................................................13

            5.    Court Congestion ....................................................................13

            6.    Local Interest .........................................................................14

            7.    Forum Familiarity with the Law and Avoidance of Unnecessary
                  Conflicts of Laws....................................................................15

IV.   CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*10Tales, Inc. v. TikTok Inc.*,
  Case No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21,
  2021) ................................................................................................................. *passim*

*In re Acer America Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ................................................................................13

*In re Adobe Inc.*,
  2020 WL 4308164 (Fed. Cir. July 28, 2020) ............................................................8

*In re Apple Inc.*,
  818 F. App'x 1001 (Fed. Cir. 2020) ..........................................................................7

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) .......................................................................8, 10, 14, 15

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
  No. 6:150cv00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ...........................7

*Gemalto S.A. v. CPI Card Grp. Inc.*,
  No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) .........................11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .....................................................................7, 12, 15

*In re Google Inc.*,
  2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ............................................................12

*In re: Hulu, LLC*,
  2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...........................................................12

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) .................................................................................8

*In re Samsung Elecs. Co., Ltd.*,
  2021 WL 2672136 (Fed. Cir. June 30, 2021) ..........................................8, 12, 14, 16

*In re TracFone Wireless, Inc.*,
  Case No. 2021-136, D.I. 11 (Fed. Cir. Apr. 20, 2021) .............................................8

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .................................................................................7

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................7, 8, 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ......................................................... *passim*

**Federal Statutes**

28 U.S.C. § 1404(a) ...........................................................................................7

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 45(c)(1)(A), (B)(ii) ....................................................................11

**EXHIBITS**

The exhibits cited in this reply as "Ex. __" are attached to the Declaration of Sarah Guske, filed as an attachment to this motion.

# PRELIMINARY STATEMENT

Defendants Qualcomm Inc. and Apple Inc. respectfully request that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).[1]  None of the merits or evidence in the case has any connection to the Western District of Texas.  Rather, the Defendants, known witnesses, and evidence are all found in California, with a heavy concentration in the NDCA, which is unsurprising given that the development of the accused functionality is performed in NDCA.  For its part, Red Rock also has no connection to WDTX.  It is a Florida corporation whose only known employee (who is also the named inventor) appears to be based outside Texas/WDTX.  As such, all the key *Volkswagen* factors favor transfer to NDCA, and none favors keeping this case in WDTX.

## I.    STATEMENT OF FACTS

### A.    Red Rock Accuses Functionality Developed in California

Red Rock Analytics LLC's Complaint accuses the "I-Q gain imbalance calibration" feature ("Accused Functionality") in 5G and Wi-Fi 6 wireless transceivers of infringing claims of U.S. Patent No. 7,346,313 (the "'313 patent").  Ex. B to Red Rock First Amended Complaint ("FAC") for Patent Infringement (D.I. 31) at 3.  With respect to Qualcomm, Red Rock accuses Qualcomm's 5G wireless transceivers ("Accused Qualcomm 5G Products"), as well as Qualcomm's Wi-Fi 6 wireless transceivers "that comply in whole or in part with IEEE 802.11ax and/or later versions of IEEE 802.11" ("Accused Qualcomm Wi-Fi 6 Products," collectively "Accused Qualcomm Products").  D.I. 31 ¶ 34.  With respect to Apple, Red Rock accuses Apple's products that include "5G wireless transceivers made by Qualcomm Inc. that comply in whole or in part with 3GPP

---

[1] Defendants do not concede that joinder is proper in this case and, by filing this motion jointly, do not waive any argument that Defendants were improperly joined.  Defendants file this motion jointly merely for the convenience of the Court and in the interest of preserving judicial resources.

release 15 and/or later releases," including "Qualcomm's SDR865, SDX55M, and/or SMR526" products ("Accused Apple Products").  D.I. 31 ¶ 19.

**B.    Defendants' Likely Witnesses and Documents are Located in NDCA and San Diego**

**1.    Qualcomm's Likely Trial Witnesses and Documents**

Qualcomm is headquartered and its U.S. operations are based in California.  Multiple offices are located in NDCA, including locations in Santa Clara and San Jose.  Decl. of R. Vijayan ¶ 7; Decl. of A. Simon ¶¶ 7, 9.  As of July 2021, approximately 13,007 of Qualcomm entities' regular U.S.-based employees are based in California (representing 88.2% of Qualcomm entities' U.S.-based employees), with approximately 1,693 based in NDCA, but only about 2.6% of Qualcomm entities' regular U.S.-based employees are in Texas.  Simon Decl. ¶¶ 6, 7, 15.

Critical to this case and the present motion, the groups that research, design, develop, and implement the Accused Functionality are located in California and not in Texas—let alone in this District.  Anthony Simon tracks resources including project budget, scope, and schedule related to the research, design, development, and implementation of the Accused Qualcomm Wi-Fi 6 Products, and he is located in NDCA.  *Id.* ¶¶ 2, 8.  Mr. Simon and the majority of the team members responsible for the research, design, development, and implementation of calibration algorithms and techniques related to I-Q imbalance for the Accused Qualcomm Wi-Fi 6 Products are based in NDCA, including James Gardner, Senior Director of Technology; Michael Kohlmann, Vice President of Technology; Roger Brockenbrough, Senior Director of Technology; and Jayanand Asok Kumar, Engineer, Senior Staff.  *Id.* at ¶¶ 9, 11–13.  Rajiv Vijayan, a Vice President of Engineering, manages a team responsible for the research, design, and development of algorithms and techniques for calibration of I-Q imbalance for the Accused Qualcomm 5G Products and is located in San Diego. Vijayan Decl. ¶¶ 2, 6. Like for the Wi-Fi 6 products, the majority of

employees on the teams responsible for the research, design, development, and implementation of calibration algorithms and techniques related to I-Q imbalance for the Accused Qualcomm 5G Products are based in NDCA and San Diego, including Rahul Malik, Principal Engineer, Manager, and Christos Komninakis, Senior Director of Technology.  *Id.* at ¶¶ 7, 9.  U.S.-based finance personnel for Qualcomm also are in California.  Vijayan Decl. ¶ 12; Simon Decl. ¶ 14.

In contrast to the numerous relevant Qualcomm teams and employees identified in NDCA or California, Qualcomm has not identified any employees in WDTX or Texas responsible for the Accused Functionality in the Accused Qualcomm Products.  Vijayan Decl. ¶ 8; Simon Decl. ¶ 10. While Qualcomm does have some personnel in Texas, Qualcomm does not maintain an office in Waco and the employees who work at the Qualcomm offices in Austin and Richardson (which is not in this District) are not responsible for the research, design, development, or implementation of algorithms and techniques for calibration of I-Q imbalance for the Accused Qualcomm Products.  Vijayan Decl. ¶¶ 13–20; Simon Decl. ¶¶ 15–22.

The electronic and paper records that may be relevant to the Accused Functionality are located in and accessible from NDCA and San Diego.  Vijayan Decl. ¶ 21; Simon Decl. ¶ 23. The financial data relating to the Accused Qualcomm Products also are located in and accessible from NDCA or San Diego.  Vijayan Decl. ¶ 12; Simon Decl. ¶ 14.  Qualcomm has not identified any relevant documents that were generated in or are locally stored in WDTX or Texas.

### 2.    Apple's Likely Trial Witnesses and Documents

Apple is a California corporation headquartered in Cupertino, California, which is in NDCA.  Decl. of Mark Rollins ¶ 3.  Apple's management, primary research and development, and marketing facilities are located in or near Santa Clara County, California, including cities such as Cupertino and Sunnyvale, all of which are located in NDCA.  *Id.*  As of August 2021, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.  *Id.*

As explained above, the accused I-Q calibration functionality in the Accused Apple Products is within the 5G chips designed and developed by Qualcomm. To the extent there are any relevant Apple technical witnesses, they are located in NDCA and San Diego. Sushant Salgar, a Senior Manager in Apple's RF Productization Team, is responsible for developing software tools for testing the Accused Apple Products. Mr. Salgar works in NDCA (Cupertino), where the majority of the team is located (other team members are located in San Diego and China). *Id.* ¶ 8. Kexin Ma is a Senior Manager in Apple's Cellular Product Software Group and is responsible for developing firmware that interfaces with the Qualcomm 5G transceivers. Mr. Ma and his team are located in San Diego, with other team members in NDCA (Cupertino). *Id.* ¶ 9. Robert Sorensen, an RF and Wireless Engineering Manager in Apple's RF Design Team, is responsible for integrating Qualcomm 5G transceivers in the Accused Apple Products. Mr. Sorensen and his team are located in NDCA (Santa Clara and Cupertino). *Id.* ¶ 9. Apple is not aware of any relevant engineers located in WDTX. *Id.* ¶¶ 7–10. Apple's expected marketing, licensing, and finance witnesses are also located in NDCA. Anush Venkatesan, a Product Marketing Manager, is knowledgeable about the marketing of the Accused Apple Products and is located in NDCA (Cupertino). Brian Ankenbrandt, a Manager in the IP Transaction Group, is knowledgeable about Apple's IP licensing practices relevant to this case and is located in NDCA (Cupertino). Mark Rollins, a Senior Finance Manager, is knowledgeable regarding financial information relating to the Accused Apple Products and is located in NDCA (Santa Clara). *Id.* ¶¶ 12–15.

Apple is not aware of any employees with relevant knowledge concerning the claims asserted against Apple who are located in WDTX, including the Apple location identified in the FAC at Paragraph 12. *Id.* ¶ 16. The employees working at Apple's Austin retail stores also are not involved with the Accused Functionality. *Id.*

The electronic and paper records that may be relevant to the Accused Functionality are located in or accessible from NDCA. *Id.* ¶ 7. The financial, licensing, and marketing data relating to the Accused Apple Products are also located in NDCA. *Id.* ¶ 11. Apple has not identified any relevant documents that were generated or are stored in WDTX. *Id.* ¶¶ 7, 11.

### C. Red Rock Has No Connections to WDTX

Red Rock has no apparent connections to WDTX. According to the FAC, Red Rock is registered in Florida and maintains its principal place of business in Florida. D.I. 31 ¶ 1. John H. Cafarella, the sole named inventor on the '313 patent, is also the manager, registered agent, and only apparent employee of Red Rock. Ex. 1 (Red Rock LLC 2021 Annual Report). According to public records, Mr. Cafarella resides in Florida. *Id.*

### D. Potential Third-Party Witnesses Are Concentrated in California

Third-party witnesses known to Qualcomm and/or Apple reside in California, either in NDCA or elsewhere in California nearer to NDCA than to WDTX. For example, in a previous litigation involving the Asserted Patent, Red Rock identified a consultant who lives in San Diego, California, whose "name appears on certain documents produced by Red Rock in this litigation" and who "may have knowledge regarding these documents." Ex. 2 (Red Rock's Initial Disclosures in Case No. 2:19-cv-00117) at 2.

Further, there are third-party witnesses located in NDCA with knowledge related to I-Q imbalance calibration. For example, Rishi Mohindra is a named inventor on multiple prior art patents and applications, including U.S. Pat. Nos. 6,744,829, 7,035,341, and 6,625,424. Ex. 12 (front page of Mohindra patents). Mr. Mohindra's U.S. Pat. No. 6,717,981 is the only prior art reference substantively addressed by the Examiner and patentee during prosecution of the '313 Patent. Ex. 10 ('313 File History). In Red Rock's FAC, it points to a paper purportedly describing the alleged importance of I-Q gain imbalance calibration that lists Tong Zhang as its first-named

author.  D.I. 31; Simon Decl. ¶ 24.  Mr. Mohindra and Mr. Zhang reside in NDCA according to public information.  Ex. 3 (LinkedIn profiles for Rishi Mohindra and Tong Zhang).

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In analyzing a motion to transfer under § 1404(a), the law of the regional circuit applies.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

First, under § 1404(a), the moving party must show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").

Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *Volkswagen II* at 315.  In evaluating convenience, the district court weighs both private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

The convenience of the witnesses is the most important factor in the transfer analysis.  *See In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020) [hereinafter *Apple I*]; *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No.

6:150cv00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016). Without a single witness in or near the transferor venue, there is "nothing on the other side of the ledger, [and] the factor strongly favors transfer." *In re Samsung Elecs. Co., Ltd.*, 2021 WL 2672136, at *6 (Fed. Cir. June 30, 2021). Even in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also, e.g.*, *In re TracFone Wireless, Inc.*, Case No. 2021-136, D.I. 11 (Fed. Cir. Apr. 20, 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) [hereinafter *Apple II*]; *In re Adobe Inc.*, 2020 WL 4308164 (Fed. Cir. July 28, 2020).[2]

## III.    ARGUMENT

The Court should transfer this case to NDCA because (1) Red Rock could have originally filed this case in NDCA and (2) NDCA is clearly a more convenient venue than WDTX under the *Volkswagen* factors.

### A.    Red Rock Could Have Filed this Action in NDCA

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312 (quoting 28 U.S.C. § 1391). Apple maintains its headquarters in NDCA. Rollins Decl. ¶ 3. Qualcomm maintains its headquarters in California and operates several offices in NDCA (regular and established places of business). Simon Decl. ¶ 6. Under Red Rock's broad allegations, Defendants conduct allegedly infringing activity in NDCA. D.I. 31, ¶ 31 (alleging infringement by Apple throughout the United States); *id.*, ¶ 40 (alleging infringement by Qualcomm throughout the United States); *see also id.*, ¶¶ 8–13 (alleging acts of infringement that also would allegedly occur in NDCA). Thus, NDCA

---

[2] The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314-15. Nor is the location of counsel. *Volkswagen I*, 371 F.3d at 206.

has personal jurisdiction over both Defendants under both general and specific jurisdiction and venue is proper for both Defendants under 35 U.S.C. § 1400(b).

### B.    NDCA Is a Clearly More Convenient Venue than WDTX

As outlined in the following chart and explained below, half of the private and public interest factors—including the important convenience of witnesses factor—favor transfer, the others are neutral, and none favors keeping the case in WDTX:

| *Volkswagen* Factors | Weight |
|---|---|
| Relative Ease of Access to Sources of Proof | Favors Transfer (*see infra*, Section III.B.1). |
| Availability of Compulsory Process | Favors Transfer (*see infra*, Section III.B.2). |
| Inconvenience to Willing Witnesses | Favors Transfer (*see infra*, Section III.B.3). |
| All Other Practical Problems | Neutral (*see infra*, Section III.B.4). |
| Court Congestion | Neutral (*see infra*, Section III.B.5). |
| Local Interest | Favors Transfer (*see infra*, Section III.B.6). |
| Forum Familiarity with the Law | Neutral (*see infra*, Section III.B.7). |
| Avoidance of Unnecessary Conflicts of Law | Neutral (*see infra*, Section III.B.7). |

This Court recently granted a motion to transfer to NDCA in *MasterObjects, Inc. v. Facebook, Inc.* where the Court found only two factors favored transfer, one weighed against transfer, and the rest were neutral. *See* Order Granting Defendant's Motion to Transfer, Case No. 6:20-cv-00087, D.I. No. 86 at 12. Here, there is even more reason to grant transfer to NDCA, where half of the factors favor transfer and the other half are neutral. *See 10Tales, Inc. v. TikTok Inc.*, Case No. 6:20-CV-00810-ADA, 2021 WL 2043978 at *6 (W.D. Tex. May 21, 2021) (granting transfer to NDCA where "[h]alf of the factors under this analysis favor transfer," "half of the factors are neutral," and "[n]o factor favors keeping this case in this District").

1.        **Relative Ease of Access to Sources of Proof**

This factor strongly favors transfer because the relevant evidence is located in NDCA or San Diego.  The relative ease of access to sources of proof considers the location of relevant evidence.  *10Tales*, 2021 WL 2043978, at *2; *Volkswagen II,* 545 F.3d at 316.  In patent infringement actions, "the bulk of the relevant evidence usually comes from the accused infringer, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Apple II*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  The relevant inquiry is to compare the two venues to determine the relative ease of access to sources of proof in the two forums.  *See Apple II*, 979 F.3d at 1340.

Here, the relevant evidence is located in NDCA and San Diego.  *See supra*, Section I.A. The research, design, and development of this Accused Functionality take place at Qualcomm's facilities in NDCA and San Diego.  Vijayan Decl. ¶¶ 6–8; Simon Decl. ¶¶ 8–9, 12–13.  The relevant technical documents, including source code, are generated and located in NDCA and San Diego. Vijayan Decl. ¶ 21, Simon Decl. ¶ 23.  Further, relevant Qualcomm documents related to financial information for the Accused Qualcomm Products are also generated and located in NDCA and San Diego.  Vijayan Decl. ¶ 12, Simon Decl. ¶ 14.  Similarly, any relevant Apple documents related to the integration and testing of the Qualcomm 5G transceivers in Apple's products are generated and located in NDCA and San Diego.  Rollins Decl. ¶ 7. Apple documents related to financial information of the Accused Apple Products are also generated and located in NDCA.  Rollins Decl. ¶ 11.  Apple's licensing functions are located in NDCA, and thus any licensing documents would be located there as well.  *Id.*

Conversely, there are no unique, relevant documents in WDTX.  Qualcomm's Austin office is not involved in the research, design, or development of the Accused Functionality in the Accused Qualcomm Products.  Vijayan Decl. ¶¶ 8, 13–20; Simon Decl. ¶¶ 10, 15–22.  Apple's Austin

offices also are not involved in integrating or testing Qualcomm's 5G chips in the Accused Apple Products.  Rollins Decl. ¶ 16.  Red Rock also does not appear to have any documents in WDTX. Red Rock's single employee—who is also the sole named inventor—resides in Florida, and Red Rock's principal place of business is in Florida.  Ex. 1.

This Court recently granted a motion to transfer to NDCA on similar facts, finding that the first factor weighs in favor of transfer where the relevant documents "will likely come from the NDCA or somewhere else in California."  *10Tales*, 2021 WL 2043978, at \*2.  The same is true here, as all the relevant sources of proof are located in NDCA and San Diego.  Thus, as in *10Tales*, this factor weighs in favor of transfer to NDCA.

### 2.      Availability of Compulsory Process

The second private interest factor weighs in favor of transfer.  It considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *10Tales*, 2021 WL 2043978, at \*3; *Volkswagen II,* 545 F.3d at 316.  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person;" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015).

Defendants have identified third parties located in NDCA who are likely to have key knowledge relevant to this case and are likely to require a subpoena to compel their attendance at trial.  As detailed in Section I.D, Rishi Mohindra and Tong Zhang are named inventors or authors on various prior art cited by the Asserted Patent and in Red Rock's Complaint, and all appear to reside in NDCA. D.I. 31; Ex. 3.  On the other hand, Defendants are not presently aware of any

10

third-party witnesses within the subpoena power of WDTX.

Therefore, this factor weighs in favor of transfer.  *In re Samsung*, 2021 WL 2672136, at *6 ("Even if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer."); *see Genentech*, 566 F.3d at 1345 (concluding that compulsory-process factor "weighs in favor of transfer" where "there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas"); *In re: Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) ("[W]here, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelming located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

### 3.    Inconvenience to Willing Witnesses

The single most important factor in the transfer analysis—the convenience for willing witnesses—weighs heavily in favor of transfer.  *See Apple II*, 818 Fed. Appx. at 1003; *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017); *Genentech*, 566 F.3d at 1342.

Defendants' likely witnesses are located in California.  *See supra*, Section I.B.  Likely witnesses include Qualcomm employees in NDCA and San Diego who research, design, and develop calibration algorithms and techniques related to I-Q imbalance for the Accused Qualcomm Products (*see supra*, Section I.B.1; Vijayan Decl. ¶¶ 7, 9; Simon Decl. ¶¶ 9, 11-13), Apple engineers in NDCA and San Diego who work on integrating and testing Qualcomm 5G Products in the Accused Apple Products (*see supra*, Section I.B.2; Rollins Decl. ¶¶ 7–10), and non-technical witnesses, respectively (*see supra*, Section I.B; Rollins Decl. ¶¶ 7–10).  Red Rock itself cites documents in its FAC that identify Qualcomm personnel based in NDCA as authors, contributors, or inventors. D.I. 31 at Ex. B; Vijayan Decl. ¶¶ 22–23; Simon Decl. ¶¶ 24–25.

The witnesses in NDCA are a car ride from any NDCA courthouse, and the witnesses in

San Diego are less than two hours away by plane (with many daily non-stop flights to any of the three major airports in NDCA), which allows the witnesses in some instances to return to San Diego the same day.  Exs. 4, 5 (flight and driving information from San Diego to San Jose). In contrast, if the case were to remain in WDTX, witnesses would travel nearly 1,500 miles to WDTX, with fewer non-stop flight options, as well as a lengthy car ride from the Austin or Dallas Fort Worth airports to Waco.  Exs. 5–9 (flight and driving information from San Diego and San Jose to Austin and Dallas).  This travel burden is significant and has often been cited as a key reason why transfer is appropriate.  *See, e.g.*, *Volkswagen II*, 545 F.3d at 317.  This length of travel also imposes additional burdens, such as meal and lodging expenses.  *Volkswagen I*, 371 F.3d at 204-205; *see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

In contrast, there are no identified witnesses who reside in WDTX.  John Cafarella, the sole named inventor and only employee of Red Rock, is located in Florida.  He would have to travel regardless of the venue, and thus the "'100 mile rule' should not be rigidly applied."  *In re 10Tales*, 2021 WL 2043978, at *4 (citing *In re Genentech, Inc.*, 566 F.3d at 1344); *see also Tracfone*, 2021 WL 1546036, at *3 (finding NDCA only "slightly" more inconvenient than WDTX for East Coast witnesses).  Further, Defendants are unaware of any non-party witnesses for whom WDTX would be a more convenient forum.  Thus, the convenience to the party and non-party witnesses—the vast majority of whom are located in NDCA or San Diego—weighs in favor of transfer under this factor.  *In re Samsung*, 2021 WL 2672136, at *6.

In sum, it would be clearly more convenient for NDCA and San Diego-based witnesses to attend trial in NDCA.  *Volkswagen II*, 545 F.3d at 317 (recognizing the "obvious conclusion" that "it is more convenient for witnesses to testify at home"); *see Apple II*, 979 F.3d at 1341-42.  The facts here are analogous to *10Tales*, where the relevant witnesses also "resid[ed] in either the

NDCA or somewhere else in California." *10Tales*, 2021 WL 2043978, at *4. Based on those facts, this Court found that "[r]ather than time-consuming and costly travel being inevitable regardless of venue, most witnesses here are faced with either extreme—NDCA as arguably the most convenient federal forum for such witnesses, or this District located over 1,300 miles further." *Id.* As in *10Tales*, this factor weighs in favor of transfer to NDCA. *See also MasterObjects*, at 9 (weighing factor in favor of transfer to NDCA where there are a "significant amount of witnesses in California" and not "a single relevant witness in WDTX, let alone Texas").

### 4.    All Other Practical Problems

The final private interest factor—"all other practical problems that make trial of a case easy, expeditious, and inexpensive" (*Volkswagen II*, 545 F.3d at 314)—is neutral, as there are no co-pending cases involving the same technology before this Court. And as this Court has recognized, even if there were co-pending cases, that fact would not outweigh the Defendants' strong presence in NDCA. *10Tales*, 2021 WL 2043978, at *4 (citing *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017)).

### 5.    Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *10Tales*, 2021 WL 2043978, at *5 (citing *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963)). As the Federal Circuit has observed, this is the "most speculative" factor, as "case-disposition statistics may not always tell the whole story." *In re Genentech, Inc.*, 566 F.3d at 1347. At a minimum, this factor is neutral. The median time to trial between NDCA and WDTX for cases filed since January 1, 2016 slightly favors transfer—17.3 months in NDCA versus 23.9 in WDTX. *See* Ex. 11 (Docket Navigator); *see also Apple II*, 979 F.3d at 1343 (finding 25.9 months for NDCA versus 25.3 months for WDTX "comparable"). Further, this case is in its infancy; Defendants just responded to the First Amended Complaint on

13

July 14, 2021, and neither discovery nor a *Markman* hearing has occurred. As this Court found in *10Tales*, "a transfer at this stage of the litigation would not likely create any meaningful delays." *10Tales*, 2021 WL 2043978, at *5 (finding this factor neutral after comparing court congestion between NDCA and WDTX). Both the transferor and the transferee jurisdictions will proceed to trial along a reasonable and prompt timeline.

### 6.    Local Interest

The second public interest factor—whether there is a local interest in deciding local issues at home—strongly favors transfer. *See Volkswagen II*, 545 F.3d at 317. Under this factor, the Court must consider whether there are "significant connections between a particular venue and the events that gave rise to a suit." *10Tales*, 2021 WL 2043978, at *5 (quoting *Apple II*, 979 F.3d at 1345). "One event particularly relevant to this analysis is the location of where 'the accused products were designed, developed, and tested.'" *Id.*

This factor weighs in favor of transfer. Defendants' strongest presence is in California, and the events giving rise to this case have "significant connections" with NDCA. As explained above, Red Rock's complaint accuses a feature called "I-Q gain imbalance calibration" within Qualcomm's 5G and Wi-Fi 6 wireless transceivers. Qualcomm's work on the research, design, and development of the Accused Functionality related to the Accused Qualcomm Products occurs in NDCA or San Diego. *See supra*, Section I.B.1 ("Qualcomm's Likely Witnesses and Documents"). Moreover, the engineering groups at Apple who are involved in integrating and testing the Qualcomm 5G transceivers in the Accused Apple Products are also located in NDCA. *See supra*, Section I.B.2. Thus, NDCA has a strong local interest in this matter because the research, design, and development of the accused products in the transferee forum are "significant factors" that provide "a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung*, 2021 WL 2672136, at *7 (*citing Apple II*, 979 F.3d at 1344–45).

In contrast, neither party has any "significant connections" to WDTX. Red Rock has no apparent connection to WDTX, much less any connections to the events that gave rise to the lawsuit. *See supra*, Section I.C. And while Qualcomm and Apple have a presence in WDTX, those are "general contacts with the forum that are untethered to the lawsuit" and should be discounted. *See In re Samsung*, 2021 WL 2672136, at *7 (citations omitted) ("The fact that infringement is alleged in the Western District of Texas gives that venue no more of a local interest than the Northern District of California or any other venue."); *10Tales*, 2021 WL 2043978, at *5 (finding that "this sort of 'general presence' should not be given much consideration").

This Court recently granted a motion to transfer to NDCA on similar facts, finding that the local interest factor weighed in favor of transfer to NDCA because "neither party ha[d] any 'significant connections' to this forum" and "significant connections" existed between NDCA and "events giving rise to th[e] suit"—the design, development, and testing of the accused products. *10Tales*, 2021 WL 2043978, at *5. The same is true here—neither Defendants nor Red Rock has any significant connections to WDTX, and significant connections exist between NDCA and the events giving rise to this suit.

### 7.    Forum Familiarity with the Law and Avoidance of Unnecessary Conflicts of Laws

Finally, the last two factors are neutral, as there are no perceived conflicts of law and both districts are equally qualified to apply patent law.

## IV.    CONCLUSION

Based on the *Volkswagen* factors discussed above, NDCA is a "clearly more convenient forum" than WDTX, as half of the factors favor transfer, half are neutral, and no factor favors keeping the case in WDTX. Thus, Defendants respectfully request that this Court transfer this case to NDCA.

Dated: August 24, 2021

OF COUNSEL:
Mark D. Selwyn (*Pro Hac Vice*)
Joseph F. Haag (*Pro Hac Vice*)
S. Dennis Wang (*Pro Hac Vice*)
Anh-Khoa Tran (*Pro Hac Vice*)
Henry M. Nikogosyan (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  and DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
Email: mark.selwyn@wilmerhale.com
Email: joseph.haag@wilmerhale.com
Email: dennis.wang@wilmerhale.com
Email: khoa.tran@wilmerhale.com
Email: henry.nikogosyan@wilmerhale.com

Joseph J. Mueller (*Pro Hac Vice*)
Monica Grewal (*Pro Hac Vice*)
Annaleigh E. Curtis (*Pro Hac Vice*)
Madeleine C. Laupheimer (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  and DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: joseph.mueller@wilmerhale.com
Email: monica.grewal@wilmerhale.com
Email: annaleigh.curtis@wilmerhale.com
Email: madeleine.laupheimer@wilmerhale.com

J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429

Respectfully submitted,

/s/ *Douglas Kubehl*

Douglas M. Kubehl
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201
Tel: (214) 661-4486
Email: doug.kubehl@bakerbotts.com

Aashish G. Kapadia
Nick Schuneman
BAKER BOTTS LLP
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
Tel: (512) 322-2500
Email: Aashish.kapadia@bakerbotts.com
Email: nick.schuneman@bakerbotts.com

Sarah Guske (*Pro Hac Vice*)
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Tel: (415) 291-6200
Email: sarah.guske@bakerbotts.com

*Attorneys for Qualcomm Inc.*

Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com


*Attorneys for Apple Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with Local Rule CV-7(g), counsel for Defendants Apple and Qualcomm conferred in a good faith attempt to resolve the matter by agreement.  The parties did not reach an agreement because Red Rock opposes the motion.

*/s/ Douglas Kubehl*
Douglas M. Kubehl

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on August 24, 2021.

*/s/ Douglas Kubehl*
Douglas M. Kubehl
