IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **RED ROCK ANALYTICS, LLC,**<br>**Plaintiff,**<br><br>*v.*<br><br>**APPLE INC. and QUALCOMM, INC.,**<br>**Defendants.** | 6:21-cv-00346-ADA |

**MEMORANDUM OPINION AND ORDER DENYING APPLE'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT [ECF No. 36]**

Came on for consideration this date is Apple Inc.'s Motion to Dismiss First Amended Complaint. ECF No. 36 (the "Motion"). Red Rock Analytics, LLC filed an opposition on July 28, 2021, ECF No. 40, to which Apple replied on August 4, 2021, ECF No. 44. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Apple's Motion to Dismiss First Amended Complaint.

**I. BACKGROUND**

On April 11, 2019, Red Rock sued Apple for patent infringement in the Eastern District of Texas. *Red Rock Analytics, LLC v. Apple Inc.*, No. 2:19-cv-00117-JRG (E.D. Tex. Apr. 11, 2019) (ECF No. 1 ¶¶ 13–14) ("*Red Rock I*"). Red Rock accused the iPhone 5, 6, 7, 8, and 10 models, alleging that the Wi-Fi transceivers practiced I-Q calibration functionality claimed in the U.S. Patent No. 7,346,313 (the "'313 patent"). *Id.* On February 8, 2020, *Red Rock I* was dismissed with prejudice after the parties settled. *See Red Rock I*, ECF Nos. 75, 76.

On April 8, 2021, Red Rock initiated this Action against Apple. Red Rock asserts 36 claims from the '313 patent, including each claim asserted in *Red Rock I*. *See* ECF No. 1; ECF No. 31 ("FAC") And, according to Apple, Red Rock is accusing "essentially the same I-Q calibration activity" at issue in *Red Rock I*. ECF No. 36 at 4. Yet, here, Red Rock is accusing the iPhone 12,

and specifically the Qualcomm-manufactured Wi-Fi transceiver *and* 5G cellular transceiver therein—not the Wi-Fi transceivers of the earlier iPhones accused in *Red Rock I*.

On July 7, 2021, Apple moved to dismiss this Action under the *Kessler* Doctrine or, in the alternative, to dismiss Red Rock's claims for induced and willful infringement under Rule 12(b)(6). ECF No. 36.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to Plead

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. However, in resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

### B. The *Kessler* Doctrine

The *Kessler* doctrine prevents a patentee from reasserting previously litigated claims or issues against a defendant or its customer following a finding of non-infringement. *Kessler v. Eldred*, 206 U.S. 285, 289–90 (1907). The purpose of this doctrine is to "[allow] an adjudged non-

2

infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020) (quoting *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014)). Thus, a judgment of non-infringement grants "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference.'" *Brain Life*, 746 F.3d at 1057 (quoting *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) (alterations original)). A patent infringement claim is precluded under the *Kessler* doctrine when (1) the defendant is an adjudged non-infringer and (2) "the earlier judgment held that 'essentially the same' accused activity did not infringe the patent." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (quoting *Brain Life*, 746 F.3d at 1057–58). It is the defendant's burden to prove these elements are satisfied. *See Tech. Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096, 1102 (E.D. Cal. 2010); *AVM Techs., LLC v. Intel Corp.*, Civil Action No. 15-33, 2017 U.S. Dist. LEXIS 65692, at *5 (D. Del. Apr. 28, 2017); *SKC Kolon PI v. Kaneka Corp.*, No. CV 16-05948, 2017 U.S. Dist. LEXIS 182994, at *9 (C.D. Cal. Mar. 13, 2017); *cf. Innovation Scis., LLC v. HTC Corp.*, Civil Action No. 4:19-CV-00752, 2020 U.S. Dist. LEXIS 82079, at *9 (E.D. Tex. May 11, 2020).

   C. **Willful and Indirect Infringement**

  To allege indirect infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit, or was willfully blind to the existence of the patents-in-suit. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement,

3

contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). A showing of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769.

Similarly, to allege willful infringement, the plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1933 (2016). This requires a plaintiff to allege facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019).

### III. ANALYSIS

#### A.  The *Kessler* Doctrine Does Not Preclude This Action

##### 1. Step 1: Apple Is an Adjudged Non-infringer

Apple has cleared the *Kessler*'s first hurdle and primarily relied on *In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020) in doing so. In that case, the Federal Circuit rejected PersonalWeb's contention that the issue of non-infringement must be "actually litigated" for the *Kessler* doctrine to apply. *Id.* at 1376–77. In the appellate court's judgment, PersonalWeb's stipulated dismissal with prejudice operated as an adjudication of non-infringement on the merits for preclusion purposes. *Id.* at 1377–79. Apple, therefore, argues that the dismissal with prejudice in *Red Rock I* is likewise a judgment of non-infringement for *Kessler* doctrine purposes. ECF No. 36 at 10–11.

The Court agrees with Apple and holds that *PersonalWeb* establishes that Apple is an adjudged non-infringer. Red Rock's response to Apple's argument is two-fold and unconvincing.

First, Red Rock argues that *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1301 (Fed. Cir. 2017), not *PersonalWeb*, controls.[1] ECF No. 40 at 6–7. In *Mentor Graphics*, the Federal Circuit held that a defendant was not an "adjudged infringer" where, though there was a settlement followed by a motion to dismiss with prejudice, the settlement was contingent on a license for the defendant. 851 F.3d at 1301. *Mentor Graphics* is, however, inapposite here where neither party has alleged that the dismissal was contingent on a license. *See* ECF No. 44 at 7; ECF No. 44 at 3; *see also PersonalWeb*, 961 F.3d at 1378 (distinguishing *Mentor Graphics* on the same grounds). Red Rock's assertion that "[t]his case is like *Mentor* in that the [*Red Rock I*] settlement agreement does not grant Apple a license . . . with respect to the" FAC's accused products, ECF No. 40 at 6, completely fails to track the reasoning in *Mentor Graphics*, and otherwise raises issues reserved to *Kessler*'s second step. In the same vein, the Court flatly rejects Red Rock's invitation to abolish the second step of the *Kessler* inquiry and require Apple to show, at the first step, that the *Red Rock I* settlement agreement covered exactly those products accused here. *See* ECF No. 40 at 7 ("To meet its burden, Apple would have to somehow prove that the [*Red Rock I*] settlement agreement covered the products accused in this lawsuit.").

Second, Red Rock attempts to distinguish *PersonalWeb* on two grounds: (1) the Federal Circuit declined to extend its holding to cover products (Amazon CloudFront) not accused in the first suit that was dismissed with prejudice, ECF No. 40 at 8 (citing *PersonalWeb*, 961 F.3d at 1375 n.4); and (2) the *PersonalWeb* parties did not fashion their settlement agreement to preserve

---

[1] In its discussion of *Mentor Graphics*, Red Rock also quotes *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) for the contention that "a prior judgment 'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon the previous case.'" Red Rock has not shown that *Lawlor* is relevant to this first step of the *Kessler* doctrine. To that point, the *Mentor Graphics* opinion invokes *Lawlor* within the context of other preclusion doctrines—not the *Kessler* doctrine.

a right to sue the accused infringer again, *id.* at 9 (citing *PersonalWeb*, 961 F.3d at 1378–79). Red Rock posits that the first *Kessler* step is not satisfied because: (1) the accused products here were not at issue in *Red Rock I*; and (2) the parties fashioned their settlement in *Red Rock I* such that it did not extend to any future Apple products. *Id.*

This is not persuasive. As to the first ground, the Federal Circuit declined to extend its holding to cover Amazon CloudFront, not, as Red Rock suggests, because the products were not at issue in the first suit that was dismissed with prejudice, but because the customer cases on appeal did not even involve accusations directed to Amazon CloudFront. *PersonalWeb*, 961 F.3d at 1375 n.4.

As to Red Rock's second ground for distinguishing *PersonalWeb*, the Court is not convinced the *Red Rock I* settlement agreement limited the preclusive effect of the dismissal with prejudice. The *PersonalWeb* opinion states that "[s]ettling parties will remain free to limit the preclusive effect of a dismissal; they simply have to fashion their agreement in a way that makes clear any limitations to which they wish to agree as to the downstream effect of the dismissal. 961 F.3d at 1379. Red Rock's only allegation as to the scope of the *Red Rock I* settlement agreement is that Red Rock "did not grant Apple a license or any other rights in the '313 Patent with respect to the Apple Infringement Products" at issue here. ECF No. 40 at 9 (quoting FAC ¶ 26). Red Rock's opposition brief includes arguments that "the parties fashioned their settlement agreement to exclude future products" without citation to evidence. *Id.* These representations, without more, do not establish that the *Red Rock I* settlement agreement obviated application of the *Kessler* doctrine by "mak[ing] clear" that Red Rock preserved a right to sue Apple on the claims here. The Court hesitates to hold that the parties intended to limit the *Kessler* doctrine's preclusive effect absent excerpts from the *Red Rock I* settlement agreement showing as much.

6

For the foregoing reasons, Apple clears the first hurdle in *Kessler*.

### 2. Step 2: Apple Has Not Shown the Accused Products Are Essentially the Same as those In *Red Rock I*

Yet Apple fails to show that the accused products here are essentially the same as the products accused in *Red Rock I*. Products are "essentially the same where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *PersonalWeb*, 961 F.3d at 1376 (quoting *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)). Products that "do not completely overlap" are still considered essentially the same "so long as those differences are not relevant to the infringement inquiry." *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-cv-00017- CMC, 2015 WL 12696204, at *14 (E.D. Tex. May 12, 2015).

*Acceptable Non-infringing Alternatives.* Apple first argues that the FAC "alleges that **all** 802.11ax Wi-Fi 6 transceivers (regardless of whether they are made by Broadcom or Qualcomm) have the same structure and operation as claimed in the '313 patent because it alleges 'there are no acceptable non-infringing alternatives to the '313 patent that would enable compliance with these [802.11ax] requirements.'" ECF No. 44 at 5 (quoting FAC, Ex. B at 13). According to Apple, this necessarily means that "the same structure and methods recited in the '313 patent must be present in all 802.11ax-compliant products." *Id.* That is, "the lack of non-infringing alternatives, if true, would mean that every 802.11ax-compliant transceiver must perform I-Q calibration using the claimed methods and structure in the '313 patent." ECF No. 44 at 5. Apple thus concludes that the accused products here and in *Red Rock I* are essentially the same.

The Court rejects this argument for at least two reasons. First, Apple turns Red Rock's allegation that there are no "*acceptable* non-infringing alternatives" into an allegation that there are no "non-infringing alternatives." Having erased the "acceptable" condition, Apple asserts, "that every 802.11ax-compliant transceiver must perform I-Q calibration using the claimed

7

methods and structure in the '313 patent." But by qualifying "non-infringing alternatives" with the term "acceptable," Red Rock leaves open the possibility that there are non-infringing alternatives to the '313 patent enabling compliance with the 802.11ax requirements that simply lack "the advantages of the patented product." *Stryker Corp. v. Intermedics Orthopedics*, Inc., 96 F.3d 1409, 1418 (Fed. Cir. 1996). This, likewise, leaves open the possibility that the transceivers of *Red Rock I* are non-infringing alternatives, but not acceptable ones.

Second, even if Red Rock asserted that every 802.11ax-compliant transceiver must perform I-Q calibration using the claimed methods and structure of the '313 patent, Apple has not shown that, for example, independent claim 1 is so constrained that it does not cover two or more systems that are not essentially the same. It is a tautology that every infringing product will use the claimed structure of the infringed patent claim. That does not mean that every infringing product is "identical" or "essentially the same" as another, otherwise there would be few if any instances where *Kessler*'s second step would be a needless exercise. *See* ECF No. 40 at 17 ("The fact that two devices infringe the same patent does not mean that those devices are 'substantially the same' (otherwise all infringing devices would automatically be 'substantially the same')."). Accordingly, Red Rock's allegation as to non-infringing alternatives is not a concession that the accused products here are essentially the same as those in *Red Rock I*.

*Similarity Between Qualcomm Wi-Fi and 5G Transceivers.* Apple also argues that, because Red Rock alleges that "Qualcomm Wi-Fi transceivers are essentially the same [as] Qualcomm 5G transceivers for the purposes of infringement of the '313 patent . . . it necessarily follows that Broadcom Wi-Fi transceivers [accused in *Red Rock I*] are also essentially the same as Qualcomm 5G transceivers for the purposes of infringement of the '313 patent." ECF No. 44 at 7. In support, Apple heavily relies on allegations incorporated into the FAC that the I-Q calibration activity of

the accused Qualcomm Wi-Fi transceivers and accused Qualcomm 5G transceivers is "identical or substantially similar." *Id.* (quoting FAC, Ex. B at 3). Inexplicably, Apple turns this into: "Red Rock *itself* has alleged in its . . . [FAC] that *all* [Wi-Fi] transceivers and 5G transceivers operate in 'an identical or substantially similar manner' and infringe for the same reasons." ECF No. 36 at 13 (emphasis in original). It concludes, then, that the second step of the *Kessler* analysis is satisfied. *Id.*

Apple's reasoning is difficult to parse. On review of the evidence, the Court is left wondering where Red Rock has alleged either that: (a) all Wi-Fi transceivers and 5G transceivers operate identically or substantially similarly, regardless of manufacturer; or (b) that Qualcomm's Wi-Fi transceivers, accused here, and Broadcom's Wi-Fi transceivers, accused in *Red Rock I*, are essentially the same. Red Rock confirms it has not said "that the *Broadcom* transceivers from [*Red Rock I*] calibrate in the same manner as the Qualcomm transceivers in this lawsuit (because that would not be true)." ECF No. 40 at 18; *see also* ECF No. 40 at 10 ("Qualcomm and Broadcom each employ different proprietary circuitry, processors, and source code that implement the accused I-Q calibration functionality claimed in the asserted '313 Patent."). Without the allegations identified above, the Court cannot indulge Apple's leaps of logic.

*Red Rock I Infringement Contentions* Apple also points to the breadth of the *Red Rock I* infringement contentions as evidence of the required identity or essential similarity. Those contentions "broadly accused 'any existing and *forthcoming* Apple products with transceiver(s) that comply with . . . 802.11ax'—not just Apple products with Broadcom transceivers." ECF No. 44 at 6 (quoting ECF No. 44, Ex. 1 (June 17, 2019 Infringement Contentions) at 2 (emphasis added)). The contentions' broad language captures forthcoming models not in existence at the time Red Rock filed *Red Rock I*. For purposes of preclusion, "the normal rule [is] that the products at

9

issue in a patent suit are those in existence at the time the suit is filed." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1346 (Fed. Cir. 2012). Barring a showing that the *Red Rock I* settlement agreement expressly departed from "the normal rules of claim preclusion," *id.*, the Court will only hold that Red Rock is precluded from accusing Apple models not in existence at the time of *Red Rock I*'s filing if Apple shows, consistent with *Kessler*'s second step, that these new models are identical to or essentially the same as Apple models in existence at the time of *Red Rock I*'s filing.

In Apple's interpretation, Red Rock's infringement contentions also stated that, for purposes of infringement, any product containing 802.11ax transceivers has the "same or similar functionality" as the identified, Broadcom-based Apple products. ECF No. 44 at 6. Apple seems to suggest that the Court must take this "allegation" to be "true for purposes of this 12(b)(6) motion," and then conclude that, because the accused products here include 802.11ax transceivers, they have identical or essentially the same functionality as the accused products from *Red Rock I*. *Id.* The Court disagrees. While the Court may consider these contentions because they were attached to the FAC, they are not allegations and, therefore, need not be assumed true for purposes of a 12(b)(6) motion. *Cf. Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage."); *In re Synchronoss Techs.*, Civil Action No. 17-7173 (FLW) (LHG), 2019 U.S. Dist. LEXIS 229476, at *26 (D.N.J. Nov. 26, 2019) ("The Court must be mindful of the risk that incorporation by reference may lead to the consideration of extrinsic evidence in evaluating the Complaint, which would be improper at this pleading stage of the litigation."). Accordingly, the Court will not assume that a statement made in infringement contentions, in another case, is true. Moreover, Apple has not

identified the doctrine that precludes Red Rock from taking a position inconsistent with that statement in this Action.

*Red Rock's Burden.* Apple also argues that "Red Rock has alleged over 120 pages about the purported structure in iPhone 12 cellular transceivers, but notably does not identify any material differences between the accused I-Q calibration activity performed by the iPhone 12 and the accused I-Q calibration activity in *Red Rock I*." ECF No. 36 at 13. Apple argues that any differences Red Rock identifies are immaterial because they do not affect the infringement inquiry. ECF No. 44 at 1, 8 ("[I]t is well-settled that the *Kessler* doctrine applies to products even with genuine differences so long as those differences are not "material to the infringement inquiry." (quoting *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1286 (Fed. Cir. 2009))).

Red Rock states that the FAC includes as attachments infringement charts for this Action and *Red Rock I*, "which provide 167 pages of evidence showing that the current products are not 'substantially the same' as the prior [*Red Rock I*] products. [The two charts] cite **none** of the same evidence." ECF No. 40 at 11 (emphasis in original). Red Rock identifies a number of differences specifically, Red Rock states are relevant to "transmit chain" limitations, ECF No. 40 at 12; the "direct-conversion subsystem" claim element, *id.* at 14; the "conversion subsystem for converting the baseband transmit signal at the intermediate frequency to an RF transmit signal" claim element, *id.*; the "baseband I-Q amplification subsystem for providing baseband amplification of the baseband transmit signal," *id.*; "receive chain" element, *id.* at 15; and more, *id.* at 15–16. The Court is sufficiently persuaded that, at the very least, the differences identified are "[]related to the limitations in the claim of the patent." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991).

Yet Apple, not Red Rock, bears the burden of showing that the differences between the products from *Red Rock I* and this case are immaterial. Apple cannot shift this burden and demand that Red Rock identify a material difference. Apple's burden is certainly onerous considering the complexity of the technology and the fact that one manufacturer supplied the accused transceivers in *Red Rock I*, and another supplied the transceivers accused in this Action. *Cf. Trs. of Bos. Univ. v. Kingbright Elec. Co.*, 427 F. Supp. 3d 246, 252 (D. Mass. 2019) (finding that the *Kessler* doctrine did not apply where the accused products in the second case incorporated chips from Cree and Tekcore while the accused products in the first case incorporated chips from Epistar). For similar reasons, the Court finds that the *Kessler* portion of this Motion is premature, constituting another ground for its denial. Red Rock has not pleaded itself out of Court in view of the *Kessler* doctrine, so the Court will have to undergo the fact-intensive inquiry of determining whether the transceivers in these cases are essentially the same. Such an inquiry is premature. *See SKC Kolon PI v. Kaneka Corp.*, No. CV 16-05948 AG (AJWx), 2017 U.S. Dist. LEXIS 182994, at *9 (C.D. Cal. Mar. 13, 2017) ("[The] factual record needs to be developed in order for the Court to determine whether the old and new products are in fact essentially the same." (quoting *Avago Techs. Gen. IP (Sing) PTE Ltd. v. Asustek Comput., Inc.*, No. 15-cv-04525-EMC, 2016 U.S. Dist. LEXIS 55655, at *11 (N.D. Cal. Apr. 25, 2016))).

For the foregoing reasons, the Court will not hold, at this stage, that *Red Rock I* precludes this Action under the *Kessler* doctrine.

B.     **Willful and Induced Infringement**

Apple argues that "Red Rock fails to plausibly allege knowledge in support of willfulness" because Apple gained a "trade right" to continue using I-Q calibration technology without infringing the '313 patent consist with the *Kessler* doctrine. ECF No. 36 at 15. Its arguments for induced infringement are substantially similar. *Id.* at 16. Apple also argues in its reply brief that:

12

> if the products are in fact as different as Red Rock says they are with respect to the '313 patent, then there is no basis to allege that Apple knew or should have known that the current accused products amounted to infringement and mere knowledge of the patent and the accused products is not enough to allege willful infringement or inducement.

ECF No. 44 at 10. For this proposition, Apple cites *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 19-cv-00207, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). Yet, in *Parity*, the plaintiff's willfulness claim survived a motion to dismiss because the complaint adequately alleged "knowledge of infringement" where it merely alleged that defendant received a pre-complaint notice letter. *Id.* Because the Court has rejected Apple's *Kessler* theory and Apple knew of the '313 patent when it was sued in *Red Rock I*, well before this Action was filed, the Court follows *Parity* in holding that Red Rock's pleadings directed to willful and induced infringement are sufficient to survive a motion to dismiss under Rule 12(b)(6).

## IV. CONCLUSION

It is therefore **ORDERED** that Apple's Motion to Dismiss First Amended Complaint is **DENIED**.

SIGNED this 8th day of December, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE