**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| RED ROCK ANALYTICS, LLC, | |
| Plaintiff, | Civil Action No. 6:21-cv-00346-ADA |
| v. | |
| APPLE INC., QUALCOMM, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**RED ROCK'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**
**TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

# PUBLIC VERSION

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## TABLE OF CONTENTS

I.    Introduction .......................................................................................................... 1

    A.    This Case Centers on Persons, Documents, and Activities in and near WDTX................. 1

    B.    Defendants Present an Incomplete and Inaccurate Record................................................. 2

II.   Argument – The Public and Private Factors Weigh Against Transfer ................................... 3

    A.    Private Interest Factors ...................................................................................... 4

        1.    The Relative Ease of Access to Sources of Proof ........................................ 4

        2.    The Availability of Compulsory Process to Secure the Attendance of Witnesses........... 7

        3.    The Cost of Attendance for Willing Witnesses............................................... 8

    B.    Public Interest Factors ...................................................................................... 14

        1.    The Administrative Difficulties Flowing from Court Congestion................................ 14

        2.    The Local Interest in Having Localized Interests Decided at Home ........................... 15

III.  Conclusion.......................................................................................................... 15

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## TABLE OF AUTHORITIES

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Co.*

  2014 WL 5677834 (E.D. Tex. Nov. 4, 2014) ............................................................................... 3

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*

  2018 WL 2329752 (E.D. Tex. May 23, 2018) ............................................................................. 9

*Chester v. Thaler*,

  666 F.3d 340 (5th Cir. 2011) ..................................................................................................... 2

*In re Apple Inc.*

  374 F. App'x 997 (Fed. Cir. 2010) ............................................................................................. 9

*In re Apple Inc.*,

  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................ 17

*In re Google LLC*,

  2021 U.S. App. LEXIS 33789 (Fed. Cir. Nov. 15, 2021) ........................................................... 6

*In re Hoffmann-La Roche Inc.*

  587 F.3d 1333 (Fed. Cir. 2009) .................................................................................................. 5

*In re HP Inc.*,

  826 F. App'x 899 (Fed. Cir. 2020) ....................................................................................... 6, 10

*In re Juniper Networks, Inc.*,

  No. 2021-160, 2021 U.S. App. LEXIS 29036 (Fed. Cir. Sep. 24, 2021) ..................................... 16

*In re Overhead Door Corp.*,

  No. 2022-100, 2021 U.S. App. LEXIS 35980 (Fed. Cir. Dec. 7, 2021) ...................................... 10

*In re Pandora Media, LLC*,

  No. 2021-172, 2021 U.S. App. LEXIS 30963 (Fed. Cir. Oct. 13, 2021) ...................................... 15

*In re Vistaprint Ltd.*,

  628 F.3d 1342 (Fed. Cir. 2010) .................................................................................................. 2

CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Paltalk Holdings, Inc. v. Sony Computer Entm't Am. Inc.*

 2010 WL 3517196 (E.D. Tex. Sept. 3, 2010) ................................................................. 5

*Pers. Audio, LLC v. CBS Corp.,*

 2014 U.S. Dist. LEXIS 37089 (E.D. Tex. Mar. 20, 2014) ................................................ 3

*Rockstar Consortium LP v. Google Inc.*

 2014 WL 6480772 (E.D. Tex. Nov. 18, 2014) ................................................................. 2

*TracBeam, LLC v. Apple, Inc.*

 2015 WL 5786449 (E.D. Tex. Sept. 29, 2015) ................................................................ 5

*VirtualAgility, Inc. v. Salesforce.com, Inc.*

 2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ................................................................... 9

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*

 No. 2:17-CV-00456-JRG (E.D. Tex. May 22, 2018) ....................................................... 2

*Web Telephony, LLC v. Comcast Corp.*

 2010 WL 3860305 (E.D. Tex. Sept. 30, 2010) ............................................................... 5

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**TABLE OF EXHIBITS**

| Ex. No. | DESCRIPTION |
|---|---|
| | **DEPOSITIONS** |
| 1 | Deposition transcript of Rajiv Vijavan, taken on November 17, 2021 (Attorney's Eyes Only, highlighting added) |
| 2 | Deposition transcript of Mark Rollins, taken on November 19, 2021 (Attorney's Eyes Only, highlighting added) |
| 3 | Deposition transcript of Seydou Ba, taken on November 30, 2021 (Attorney's Eyes Only, highlighting added) |
| 4 | Deposition transcript of Kai Oeffner, taken on November 30, 2021 (Attorney's Eyes Only, highlighting added) |
| 5 | Deposition transcript of Dinkar Piratla, taken on December 8, 2021 (Attorney's Eyes Only, highlighting added) |
| 6 | Deposition transcript of Tricia Dugan, taken on December 9, 2021 (Attorney's Eyes Only, highlighting added) |
| 7 | Deposition transcript of Anthony Simon, taken on December 15, 2021 (Attorney's Eyes Only, highlighting added) |
| 8 | Deposition transcript of John Cafarella, taken on December 17, 2021 (highlighting added) |
| | **INTERROGATORY RESPONSES** |
| 9 | Defendant Apple's Objections and Responses to Red Rock's Interrogatories Nos. 1-5 Regarding Defendants' Motion to Transfer, dated October 4, 2021 (Outside Attorneys Eyes Only) |
| 10 | Defendant Qualcomm, Inc.'s Responses and Objections to Red Rock's Interrogatories Nos. 1-5 Regarding Defendants' Motion to Transfer, dated October 4, 2021 |
| 11 | Defendant Apple's First Supplemental and Amended Objections and Responses to Red Rock's Interrogatories Nos. 1-2 and 4 Regarding Defendants' Motion to Transfer, dated October 27, 2021 (Outside Attorneys Eyes Only) |
| 12 | Qualcomm Inc.'s First Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm Nos. 1-2 Regarding Defendants' Motion to Transfer, dated November 1, 2021 (Attorneys' Eyes Only) |
| 13 | Qualcomm Inc.'s First Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm Nos. 3-4 Regarding Defendants' Motion to Transfer and Appendix A, dated November 11, 2021 (Attorneys' Eyes Only) |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Ex. No. | DESCRIPTION |
|---|---|
| 14 | Defendant Apple's Second Supplemental and Amended Objections and Responses to Red Rock's Interrogatory No. 4 Regarding Defendants' Motion to Transfer, dated November 11, 2021 (Outside Attorneys Eyes Only) |
| 15 | Qualcomm Inc.'s Second Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 3 Regarding Defendants' Motion to Transfer, dated November 12, 2021 (Attorneys' Eyes Only) |
| 16 | Qualcomm Inc.'s Third Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 3 Regarding Defendant's Motion to Transfer and Appendices A-B, dated December 3, 2021 (Attorneys' Eyes Only) |
| 17 | Qualcomm Inc.'s Second Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 4 Regarding Defendants' Motion to Transfer, dated December 15, 2021 (Attorneys' Eyes Only) |
| 18 | Qualcomm Incorporated's First Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 2 Regarding Defendants' Motion to Transfer, dated December 20, 2021 (Attorneys' Eyes Only) |
| 19 | Qualcomm Incorporated's Fourth Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 3 Regarding Defendants' Motion to Transfer, dated December 20, 2021 (Attorneys' Eyes Only) |
| 20 | Qualcomm Incorporated's Fifth Supplemental Responses and Objections to Plaintiff Red Rock's Interrogatories to Qualcomm No. 3 Regarding Defendants' Motion to Transfer and Amended Appendix B and Appendices C-D, dated December 22, 2021 (Attorneys' Eyes Only) |
| | **REQUESTS FOR PRODUCTION RESPONSES** |
| 21 | Defendant Apple's Objections and Response to Red Rock's Requests for Production Nos. 1-10 Regarding Defendants' Motion to Transfer, dated October 4, 2021 |
| 22 | Qualcomm, Inc.'s Responses and Objections to Plaintiff Red Rock's Requests for Production Nos. 1-10 to Qualcomm Regarding Defendants' Motion to Transfer, dated October 4, 2021 |
| | **DEFENDANTS' DECLARATIONS** |
| 23 | Second Declaration of Mark Rollins, executed December 14, 2021 |
| 24 | Second Declaration of Anthony Simon in Support of Defendant Qualcomm |

CONFIDENTIAL – ATTORNEYS' EYES ONLY

| Ex. No. | Description |
|---|---|
| | Incorporated's Motion to Transfer Venue to the Northern District of California and Exhibit A, executed December 17, 2021 (Attorneys' Eyes Only) |
| 25 | Third Declaration of Anthony Simon in Support of Defendant Qualcomm Incorporated's Motion to Transfer Venue to the Northern District of California, executed January 5, 2021 (Attorneys' Eyes Only) |
| | **LinkedIn Pages** |
| 26 | Apple - Amy Mahan |
| 27 | Apple – Angelika Schneider |
| 28 | Apple – Anuj Dharia |
| 29 | Apple – David Standefer |
| 30 | Apple – Fikret Dulger |
| 31 | Apple – Glen Lochte |
| 32 | Apple – Howard Konetzke III |
| 33 | Apple – Jason Durnin |
| 34 | Apple – Jason Wakefield |
| 35 | Apple – John Marcincavage |
| 36 | Apple – Kai Oeffner, CMA |
| 37 | Apple – Lai Jin |
| 38 | Apple – Marcelo Ponce |
| 39 | Apple – Mary Anna Baldino |
| 40 | Apple – Nida Saiyed |
| 41 | Apple – Paul Fontaine |
| 42 | Apple – Paul Salas |
| 43 | Apple – Scott Foster |
| 44 | Apple – Seydou Ba |
| 45 | Qualcomm – Abdellatif Bellaouar |
| 46 | Qualcomm – Dinkar Piratla |
| 47 | Qualcomm – Ken Noblitt |
| 48 | Qualcomm –Matt Severson |
| 49 | Qualcomm – Sherif Embabi |
| 50 | Qualcomm – Teja Renukaradhya |
| 51 | Qualcomm – Tim Short |
| 52 | Qualcomm – Tom Leach |
| 53 | Qualcomm – Tricia Dugan |
| | **Technical Documents** |
| 54 | U.S Patent No. 10,326,420 to Bellaouar et al. |

CONFIDENTIAL – ATTORNEYS' EYES ONLY

| Ex. No. | Description |
|---|---|
| 55 | U.S Patent No. 10,944,437 to Bellaouar et al. |
| 56 | S.T. Lee et al., A 1.5V 28mA Fully-Integrated Fast-Locking Quad-Band GSM-GPRS Transmitter with Digital Auto-Calibration in 130nm CMOS, 2004 |
| 57 | U.S. Patent No. 7,376,400 to Bellaouar et al. |
| 58 | Oliver Werther et al., A Fully Integrated 14 Band, 3.1 to 10.6 GHz 0.13 um SiGe BiCMOS UWB RF Transceiver, December 2008 |
| 59 | Sher Jiun Fang et al., A 28GHz Sliding-IF Receiver in 22nm FDSOI, downloaded May 26, 2020 |
| 60 | Bertan Bakkaloglu et al., A 1.5-V Multi-Mode Quad-Band RF Receiver for GSM/EDGE/CDMA2K in 90-nm Digital CMOS Process, May 2006 |
| 61 | Ranjit Gharpurey et al., A Direct-Conversion Receiver for the 3G WCDMA Standard, March 2003 |
| 62 | Efficient Digital Baseband Predistortion for Modern Wireless Handsets, A Thesis Presented to The Academic Faculty by Seydou Nourou Ba, December 2009 |
| 63 | U.S. Patent No. 8,150,335 to Waheed et al. |
| 64 | Khurram Waheed et al., Adaptive Digital Linearization of a DRP based EDGE Transmitter for Cellular Handsets, 2007 |
| 65 | Sher Jiun Fang et al., A 90nm CMOS Receiver Front-End for GSM/GPRS/EDGE, 2006 |
| | **Other Exhibits** |
| 66 | Memorandum Order, *Red Rock Analytics, LLC v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:17-cv-00101-RWS-RSP, Dkt. No. 219, February 6, 2019 |
| 67 | Red Rock's Preliminary Infringement Contentions, *Red Rock Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, served July 1, 2021 |
| 68 | First Amended Exhibit A to Red Rock's Preliminary Infringement Contentions, *Red Rock Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, served October 4, 2021 |
| 69 | First Amended Exhibit B to Red Rock's Preliminary Infringement Contentions, *Red Rock Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, served October 4, 2021 |
| 70 | Exhibit C to Red Rock's Preliminary Infringement Contentions, *Red Rock Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, served July 1, 2021 |
| 71 | Exhibit D to Red Rock's Preliminary Infringement Contentions, *Red Rock* |

CONFIDENTIAL – ATTORNEYS' EYES ONLY

| Ex. No. | DESCRIPTION |
|---------|-------------|
|  | *Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, served July 1, 2021 |
| 72 | Transcript of Discovery Hearing held before the Honorable Alan D. Albright, *Red Rock Analytics, LLC v. Apple Inc., Qualcomm, Inc.*; Case No. 6:21-cv-00346-ADA, November 18, 2021 |
| 73 | Spreadsheet produced by Qualcomm, Bates numbered QCRRAMTT346_00000022 (Attorneys' Eyes Only) |
| 74 | Spreadsheet produced by Apple, Bates numbered APL-RR-II_00000806 (Attorneys' Eyes Only) |
| 75 | Document titled "███████████████████████████" produced by Apple, Bates numbered APL-RR_II_00000255 (Attorneys' Eyes Only) |
| 76 | Email string involving Regan Rundio [law clerk to the Hon. Alan D. Albright] and counsel for Red Rock, Apple and Qualcomm regarding a discovery dispute, dated between November 18 and December 8, 2021 |
| 77 | Tweet from the verified account of Juho Sarvikas, Qualcomm's President of North America, dated May 17, 2021 |

CONFIDENTIAL – ATTORNEYS' EYES ONLY

## I.    Introduction

### A.  This Case Centers on Persons, Documents, and Activities in and near WDTX

Red Rock's technical and damages experts, Messrs. Murias and Weinstein, have identified twenty-nine relevant party witnesses in Texas, almost triple the number Defendants say are in NDCA:

| Party | Willing Witnesses | | |
| | In or near WDTX | In NDCA | In SDCA |
| | (Count) | | |
| 1. Apple | 19 | 5 | 1 |
| 2. Qualcomm | 10 | 5 | 3 |
| 3. Red Rock | 0 | 0 | 0 |
| 4. Third-Party | 0 | 0 | 1 |
| **5. Total** | **29** | **10** | **5** |

Weinstein ¶80. Mr. Weinstein shows that the total economic cost of any inconvenience to these witnesses ($23,726 in WDTX versus $45,872 in NDCA) disfavors transfer. *Id.* ¶91. Additionally, Defendants have ▮▮ relevant teams in Texas, with thousands of members, responsible for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶81-82. Accused products are designed and developed by Qualcomm in ▮▮▮▮▮▮. Murias ¶¶83-98. Red Rock's 47,985-page document production all came from a server in Houston, Texas. Harris ¶7.

Accused Qualcomm hardware components are manufactured ▮▮▮▮▮▮▮▮, with more than ▮▮ of Qualcomm's US semiconductor manufacturing for accused 5G and Wi-Fi 6 products occurring there. *Id.* ¶¶30-43. These ▮▮▮▮ employees are relevant third-party witnesses with knowledge of infringement and are subject to this Court's compulsory process. This too disfavors transfer.

The average time to trial is over seven months longer in NDCA than WDTX. Weinstein ¶¶95-97. Defendants' Motion presented a misleading set of data that, when corrected for accuracy, shows an even greater discrepancy of 11 to 15 months of delay in NDCA. Harris ¶¶14-18. In fact, since 2018, the Waco division has held eleven patent trials, and the entire NDCA has held only three. Weinstein ¶¶95-97. Using a conservative damages estimate for this case, Mr. Weinstein used an accepted methodology from one of his prior economic studies concerning the cost of trial delay and calculated the economic opportunity costs to the parties associated with even a seven-month trial delay exceeds ▮▮▮▮. *Id.* ¶102.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

In all, five factors point towards WDTX and away from NDCA, and three are neutral.

**B.   Defendants Present an Incomplete and Inaccurate Record**

The district judge acts as the factfinder and is given deference to determine whether a movant's "clearly more convenient" burden has been met. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010); *see also Chester v. Thaler*, 666 F.3d 340, 348 (5th Cir. 2011) ("As factfinder, the trial court is entitled to deference in credibility determinations"). As in most patent cases, Defendants have superior access to information about their operations. Given the limited scope of § 1404 discovery, the non-movant can never obtain the same level of access. This creates a situation where the fox is guarding the henhouse, giving Defendants the opportunity to present an inaccurate picture of their Texas operations by selectively omitting information or by giving unwarranted weight to operations in NDCA.

This is where credibility comes in. A movant who does not present a complete and accurate record is not credible and cannot carry its burden. *Rockstar Consortium LP v. Google Inc.*, 2014 WL 6480772, at *2 (E.D. Tex. Nov. 18, 2014) (noting "multiple instances" that "called into question the veracity and completeness of [defendant's] evidence … [defendant] has not, and cannot, meet its burden"); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, Dkt. 53 at 6 (E.D. Tex. May 22, 2018) (noting the problems created by "self-serving declarations").

Defendants' view of the world is incomplete and insufficient to meet their burden. *First*, Defendants omit inconvenient information. They never mention that ████████████████████ ████████████████████████████████████████████████ ████████████████ or that Qualcomm's ████████████████████████ Defendants only acknowledged these Texas operations after Red Rock's motions to compel. A party that fails to mention inconvenient truths has not been candid and cannot meet its burden. *Pers. Audio, LLC v. CBS Corp.*, 2014 U.S. Dist. LEXIS 37089, at *8-9 (E.D. Tex. Mar. 20, 2014) (denying transfer where the movant "omitted highly relevant information in its briefing when that information did not support transfer"); *see also Abstrax, Inc. v. Hewlett-Packard Co.*, 2014 WL 5677834, at *3 (E.D. Tex. Nov. 4, 2014) ("An incomplete recitation of [the] facts may be just as misleading as an inaccurate recitation.").

*Second*, Defendants take an unduly narrow view of this case, blinding themselves (and by extension,

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Red Rock and the Court) to relevant Texas activities. Their declarations and discovery responses use carefully chosen words to obfuscate their Texas operations. For example, Qualcomm's declarants limited their investigation to "*algorithms and techniques* relating to any calibration of I-Q imbalance." Dkt. 45-15 ¶¶8, 9, 11-13, 16-23; Dkt. 45-16 ¶¶6, 7, 9-11, 14-21 (all emphases added). Qualcomm chose these words to avoid any investigation of people who develop *hardware* that performs I-Q calibration, because ███████████████████████████████████████████ Qualcomm avoided investigating hardware even though Red Rock's contentions accuse multiple hardware components (such as amplifiers, mixers, processors, channel gain adjusters, and signal paths). *See generally* Ex. 71.

When responding to Red Rock's discovery, Defendants continued their myopic approach, stating that their discovery responses were expressly limited to "the *smallest team* responsible for the work related to … the *algorithms and techniques* related to calibration of I-Q imbalance." Ex. 10 at 6 (Qualcomm); *see also* Ex. 9 at 7 (Apple limiting response to "*the smallest group unit*"). Defendants also liberally deployed the qualifier "unique" when omitting relevant witnesses and documents in Texas. Dkt. 45-17 ¶11 ("I am not aware of any Apple employee who has *unique* information relevant to this case" in WDTX); Ex. 14 at 13 ("Apple does not have *unique* working files or documents … in the WDTX.").

The Court ordered Defendants to "provide an affidavit establishing that none of the identified… employees have direct knowledge about the I-Q calibration technology in the chips identified in Red Rock's infringement contentions, or direct knowledge about *other accused functionality*…." Ex. 76. But rather than investigating "other accused functionality" (which would have required Qualcomm to disclose people who work on accused hardware), Qualcomm instead "investigated whether the surveyed employees have direct knowledge of (i.e., responsibility for) *algorithms and techniques* relating to calibration of I-Q imbalance." Ex. 25 ¶8. Despite limiting their investigation, t█████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

## II.    Argument – The Public and Private Factors Weigh Against Transfer

This suit could have been brought in either forum. The parties agree that private interest factor 4 and

CONFIDENTIAL – ATTORNEYS' EYES ONLY

public interest factors 3 and 4 are neutral. Mot. at 13, 15. The remaining factors disfavor transfer.

### A. Private Interest Factors

#### 1. The Relative Ease of Access to Sources of Proof

As a practical matter, the "cost of electronic collection, review, and production does not vary based on where the electronic documents reside" and "those costs are minimal when compared with other litigation costs." Weinstein ¶24.[1] Notwithstanding, this factor is still relevant and it weighs against transfer, because many relevant documents belonging to Red Rock, Apple, Qualcomm, and ███ are in Texas, and Apple ██████ records are managed by the ████████ Team in ████. Defendants do not deny they have relevant documents in Texas, but they elected not to investigate those documents. Other than Qualcomm's ███████████████, neither Defendant has identified any particular relevant documents in California. And Qualcomm has not shown its alleged California documents are in NDCA (as opposed to SDCA where Qualcomm is headquartered) because it did not investigate this issue.

Every document (47,985 pages) produced by Red Rock was retrieved from a Houston, TX server maintained by Heim, Payne and Chorush, where they have resided for several years before this lawsuit due to the prior *Samsung* and *Apple* litigations involving the same patent.[2] Harris ¶¶4-7. Some of these are prior filings and transcripts marked AEO, meaning only HPC is authorized to have them. *Id.* Copies of the remaining documents are also maintained at Red Rock's offices in Florida. Ex. 8 at 53:17-19.

Apple has relevant documents in Texas. Mr. Murias identified five Apple technical witnesses in Texas and a ████████ Team in Austin ██████████████████. Murias ¶¶44-82, 138. Party witnesses are considered under factor 3, but their location in Texas is also relevant here because these witnesses create and maintain in Texas documents pertaining to infringement and the technical value of the '313

---

[1] ████████████████████████████████████████. Ex. 2 at 162:18-163:8; 218:4-24. Qualcomm did not investigate whether its servers are accessible in WDTX. Ex. 1 at 124:10-125:8.

[2] Documents transferred to a district to manipulate venue must be disregarded. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). But when documents are legitimately housed in connection with a prior lawsuit, such documents are properly afforded weight. *TracBeam, LLC v. Apple, Inc.*, 2015 WL 5786449, at *3 (E.D. Tex. Sept. 29, 2015) ("TracBeam has shown that the Eastern District of Texas holds … documents that are housed in its counsel's office as a result of its two prior cases…."); *see also Paltalk Holdings, Inc. v. Sony Computer Entm't Am. Inc.*, 2010 WL 3517196, at *5-6 (E.D. Tex. Sept. 3, 2010); *Web Telephony, LLC v. Comcast Corp.*, 2010 WL 3860305, at *5 (E.D. Tex. Sept. 30, 2010).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

Patent by virtue of their knowledge and job responsibilities. *Id.*

Mr. Weinstein identified fourteen Apple witness in Texas and ████ Apple teams in Austin. Weinstein ¶¶28-34, 58-71. These people and teams create and maintain documents relevant to damages (revenues, sales, marketing, licensing) in Texas. *Id.* Importantly, the financial records in Apple's ████ ████ are created, maintained, and accessed ████ *Id.* ¶¶27-28. ████████ ████████ Ex. 2 at 32:13. Quarterly revenue associated with accused products, such as iPhones, can be accessed ████ *Id.* ¶27 (citing Ex. 2 at 22:14-23:1; 23:16-22). Apple's ██ team in ██ "maintains" the ████. Ex. 2 at 31:2-19. ████████ members upload and retrieve financial information to and from ████. Ex. 2 at 28:21-30:19. An ████ employee named ████ is responsible for ████████. Ex. 4 at 18:18-19:12. ██ servers are in ████████, but the fact that ██ custodians are located in ██ is highly relevant to this factor. *In re Google LLC*, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021) ("[C]ourt erred by analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained.").

Apple's declarant stated "documents concerning testing or integration of the Qualcomm 5G transceivers in the Apple Accused Products reside on local computers and/or servers located in the NDCA." Dkt. 45-17 ¶7. Yet he conceded "***Qualcomm does not provide Apple with the source code or other documentation*** that describes how the I-Q gain imbalance calibration works in the Qualcomm 5G transceivers." *Id.* ¶6. He also conceded at his deposition that Apple has no relevant technical documents about Qualcomm chips and he does not know whether "testing or integration" documents are relevant: "I don't know whether or not they would be relevant or not… the accused functionality resides – it's on the Qualcomm 5G transceiver, which means *all of the relevant information* associated with how Qualcomm's 5G transceiver works and I-Q gain imbalance calibration, ***it would come from Qualcomm***." Ex. 2 at 199:24-200:11. Nor could he identify any relevant technical documents in NDCA. *Id.* at 193:21-194:9; 197:15-198:11. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("it is reasonable to reject vague and unsupported statements regarding the location of potential witnesses or sources of proof").

When speaking about non-technical documents, such as financials, Apple never actually says those

CONFIDENTIAL – ATTORNEYS' EYES ONLY

documents are in NDCA. Instead, Apple's declarant stated that non-technical documents "reside on local computers and/or servers either located in or around the NDCA *or accessible in the NDCA*." Dkt. 45-17 at ¶11; *see also* Ex. 2 at 216:20-217:24 ("It *could be* in a data center that's located in northern California, or *it could be saved in a different location*."). This careful hedging is unpersuasive.

Apple's interrogatory response lists NDCA servers, but Apple does not say what those servers store, and Apple's response states that servers are included in the list "even if they are not 'Relevant Apple Databases.'" Ex. 14 at 15-16. Apple's declarant could not answer simple questions about these databases:

> Q. Other than ▮▮▮ do you know what sort of information is stored on any of the databases in Pages 15 and 16?
>
> THE WITNESS: Again, because I don't know exactly how these teams use these other databases, I don't know specifically what data would be stored here relevant to the groups that are listed within the Supplemental Response to Interrogatory Number 4 other than ▮▮▮ since I use ▮▮▮ regularly.
>
> Q. Did you try to investigate whether any of the databases on Pages 15 and 16 contained technical information about the accused Apple products?
>
> THE WITNESS: I'm trying to go through the list to see if I am aware of any of these stored technical information. None of them come to mind. I don't know either way. I did not do that specific investigation.

Ex. 2 at 160:11-162:16 (objections omitted).

Apple's declarant also stated that "Apple does not have *unique* working files or documents relevant to this case located in the WDTX." Dkt. 45-17 ¶¶7, 11. This is an implicit admission that Apple has "working files or documents relevant to this case located in the WDTX." This admission is apparent from the declarant's deposition testimony: "And so my word, 'unique,' in this sentence is that there could be a document that maybe resides in the Western District of Texas." Ex 2 at 201:9-12 and 219:18-23. Apple's declarant further admitted that he did not bother to inquire whether any relevant technical documents are in Texas: "I didn't specifically ask whether … any copies of the documents that they create or the teams create are located in the Western District of Texas." Ex. 2 at 202:6-12.

Qualcomm also has relevant documents in Texas. Mr. Murias identified ▮▮▮ Qualcomm technical witnesses in Texas and ▮▮▮ relevant teams who ▮▮▮▮▮▮▮▮▮▮▮. Murias ¶¶83-137. These people and teams create and maintain in Texas documents pertaining to infringement and the value and contributions of the '313 Patent. *Id.* Three Qualcomm witnesses in Texas are relevant to damages

CONFIDENTIAL – ATTORNEYS' EYES ONLY

and likely create and maintain relevant documents regarding damages. Weinstein ¶¶39, 73-77.

Qualcomm's declarants state that its technical documents "relating to any calibration of I-Q imbalance" are "generated by employees ████████████████████████████████ ████ Dkt. 45-15 ¶23; Dkt. 45-16 ¶21. But Qualcomm did not conduct a meaningful investigation:



Ex. 1 at 97:12-101:7. Qualcomm also says its "finance group" is ████████████████████ ████ Dkt. 45-15 ¶14; Dkt. 45-16 ¶12. But there was no real investigation:

Ex. 1 at 119:22-121:23. Qualcomm's response to Red Rock's interrogatory No. 4 identifies ████ ████████████████, while stating "Qualcomm does not concede or admit to relevance… of the repositories and their stored information." Ex. 17 at 12-14. None of these databases have ████ ████████████. The only relevant Qualcomm evidence Red Rock can say for sure is in California is Qualcomm's ██████████████████████████████████████. Murias ¶20.

As discussed further below, ████ has a massive fabrication facility ████ that manufactures more than ██% of Qualcomm's ██████████████ for the accused products, including certain accused hardware features. Id. ¶41. Given ████ direct involvement in this manufacture, ████ would necessarily have technical documents that describe these features bearing on infringement. Id. ¶43.

2.  The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor weighs against transfer. ████ witnesses in WDTX are more likely to testify at trial than the two persons Defendants identified. And even if one ████ witness and both of Defendants' witnesses testified, Mr. Weinstein's analysis (¶46) shows the trial attendance cost for them is lower in WDTX:

CONFIDENTIAL – ATTORNEYS' EYES ONLY

| Third Party Witness | Cost of Attendance in the WDTX | Cost of Attendance in the NDCA |
|---|---|---|
| Rishi Mohindra | $984 | $572 |
| Tong Zhang | $984 | $572 |
| ▮ Austin Employee | $286 | $1,168 |
| **Average Cost of Attendance** | **$751** | **$771** |

Defendants identify two allegedly relevant third-party witnesses in NDCA, Rishi Mohindra and Tong Zhang. Mot. at 10. Dr. Mohindra is an inventor on a prior art reference. Defendants have not said they will call him, and such witnesses are "rarely called to trial." *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752, at *5 (E.D. Tex. May 23, 2018); Weinstein ¶45. Red Rock will not call Dr. Mohindra. Harris ¶19. Dr. Zhang co-authored an academic paper cited in Red Rock's contentions. Red Rock will not call Dr. Zhang as a witness and will instead rely on source code and other evidence to prove infringement. *Id.* ¶20. Nor have Defendants said that they plan to call Dr. Zhang.[3]



▮▮▮▮ facility is a source of relevant third-party witnesses. ▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. Murias ¶¶41-42. Mr. Murias analyzed Qualcomm's source code for these ▮▮ and identified multiple elements of the claimed ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in claims 7 and 22). Murias ¶19-29, 41. ▮▮ employees likely have relevant knowledge of such "claimed features, how those features are laid out on the chip, and how they are connected." Murias ¶42. Red Rock has not taken discovery of ▮▮, so cannot identify its employees by name, but this is not required. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("There was thus no basis to discount these [third-party] entities just because individual employees were not identified.").

### 3. The Cost of Attendance for Willing Witnesses

This factor disfavors transfer. Apple identifies five NDCA witnesses, but three are technical persons

---

[3] Defendants have not argued that they would be inconvenienced by presenting these witnesses' deposition testimony at trial *In re Apple Inc.*, 374 F. App'x 997, 998 (Fed. Cir. 2010) (upholding denial of transfer and observing that "the availability of video depositions of non-party witnesses" may mitigate inconvenience); *see also VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014).

CONFIDENTIAL – ATTORNEYS' EYES ONLY

with admittedly (as shown above) no relevant knowledge. Thus, Apple identifies at most two relevant Apple NDCA witnesses. Qualcomm identified eleven NDCA witnesses, but six are people who merely authored documents cited in contentions that no party will call at trial. There are at most five relevant Qualcomm witnesses in NDCA. Red Rock has one SDCA witness, one in Florida, and Red Rock's experts have identified twenty-nine relevant party WDTX witnesses. Mr. Weinstein explains that typical trials have about three or four fact witnesses per side. Weinstein ¶84. Because there are far more witnesses in WDTX than in NDCA, it stands to reason that more witnesses will come from WDTX, resulting in a lower cost of trial in WDTX. But even assuming equal numbers of witnesses from WDTX, NDCA, and SDCA, the cost of trial attendance is still lower in WDTX ($2,201) than NDCA ($2,736). *Id.* ¶¶88-90.

Even assuming every person Defendants identify in their declarations is relevant, Defendants have identified sixteen people in NDCA and ten people in SDCA, as compared with Red Rock's twenty-nine identified witnesses in WDTX. "[A] district court acts reasonably when it refuses to weigh the willing witness factor in favor of transfer if unable to determine from the movant's presentation of the factor that there are more potential witnesses in the transferee venue than the plaintiff's chosen forum." *In re Overhead Door Corp.*, No. 2022-100, 2021 U.S. App. LEXIS 35980, at *5 (Fed. Cir. Dec. 7, 2021). It is unrealistic to think all of these witnesses will come to trial, but Mr. Weinstein calculates that if they did, it would be significantly cheaper in WDTX ($23,726) than NDCA ($45,872). Weinstein ¶91.

Apple's declarant identifies six Apple witnesses. Dkt. 45-17. Five are in NDCA, and one is in SDCA. Three are technical witnesses involved, for example, in "integrating Qualcomm 5G transceivers." *Id.* ¶¶8–10. But as shown above, the declarant conceded that Apple employees have zero relevant knowledge when it comes to Qualcomm chips because "***all of the relevant information*** associated with how Qualcomm's 5G transceiver works and I-Q gain imbalance calibration … ***come[s] from Qualcomm***." Ex. 2 at 200:7-11. Nor did Apple meaningfully investigate whether it has Texas employees with technical knowledge. *See id.* at 98:17-20 ███████████████████████████████

███████████████████████; *id.* at 93:1-11 ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Ex. 2 at 98:6-99:19; 115:1.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

███████████████████████████████████████████ Ex. 3 at 13:15-17; 14:14-16; Ex. 2 at 99:21-101:15. Red Rock's contentions accuse all Apple products "that include a 5G wireless transceiver." Ex. 68 at 1. ██████████████████████████████████████████████████████████ ████████████████████████████████████████████ Murias ¶¶47-57.

Importantly, ██████████████████████████████████████████████ these Apple employees in ██████████████████████ have knowledge about the value and technical contributions of the '313 Patent invention. In the previous *Samsung* case, "[t]o determine the value of the '313 patent's technology, Weinstein relie[d] on [the technical expert's] findings regarding the ***'313 patent's effect on error vector magnitude ('EVM')*.*" Ex. 66 at 1-2 (order denying a *Daubert* challenge against this methodology). EVM is a measure of transceiver error that "provides a way to numerically quantify benefits obtained by the accused infringer by practicing the '313 Patent, including improvements in transmission speed and throughput performance in the accused transceivers." Murias ¶17. The 5G and Wi-Fi 6 standards specify EVM requirements. *Id.* ¶15. Apple's ████ employees will understand the importance of I-Q calibration for EVM improvement and 5G standard compliance.

For example, Austin employee Seydou Ba is a member of the Apple ██████ Team and his patents and publications discuss I-Q gain imbalance calibration and EVM improvement techniques. Murias ¶58-65. Dr. Ba's Ph.D. thesis provides a mathematical definition of EVM. *Id.* ¶62 (citing Ex. 62). His thesis acknowledges "quadrature *(I/Q) gain* and phase *imbalances*" as problematic and describes a way of calibrating I-Q gain imbalance. *Id.* This calibration technique includes a transmitter-to-receiver loopback signal path, direct conversion mixers, and channel gain adjusters, among other features relevant to the '313 patent. *Id.* Dr. Ba's thesis further includes simulations that show an initial 8.0% I-Q gain imbalance, which limits EVM to -24.9dB and is insufficient to comply with either the 5G or Wi-Fi 6 standards, but his calibration improved EVM to standard-compliant levels. *Id.* ¶63. Dr. Ba has knowledge about how I-Q calibration improves EVM and why it is important for standard compliance. ██████████████████ ███████████████████████████████████████ Murias ¶58-59.

Mr. Murias provides a detailed technical analysis of five specific relevant Apple technical witnesses in Austin and concludes that all of these people have knowledge relevant to infringement and the value

CONFIDENTIAL – ATTORNEYS' EYES ONLY

of the patented features, including: I-Q gain imbalance calibration (Ba, Schneider, Marcincavage); the effect of I-Q gain imbalance on EVM measurements and transceiver performance (Ba, Dulger, Fontaine); the claimed "signal path for injecting" (Ba, Schneider, Marcincavage); the claimed "direct conversion subsystem" (all); and the claimed "processor" (Fontaine, Marcincavage). *Id.* ¶¶58-82.

Mr. Weinstein similarly concluded, in his detailed analysis, that fourteen Apple witnesses in Austin have knowledge relevant to damages topics including: accused product revenues and unit sales (Foster, Lochte, Oeffner, Salas, Jin, Baldino, Ponce); IP licensing policies and comparable licenses (Dharia, Wakefield); accused product marketing and customer demand for accused features (Mahan, Konetzke, Oeffner, Durnin, Standefer); and sales forecasting (Saiyed). Weinstein ¶¶56-71. Mr. Weinstein also identifies the specific *Georgia*-Pacific factors that each witness is knowledgeable about. Additionally, Mr. Weinstein identified ███ relevant Apple teams in Austin that are relevant to damages. *Id.* ¶¶28-34. The ██████████ Team is responsible for ████████████████████████████ *Id.* ¶¶27-31. The ██████████████ and ████████████ Teams are responsible for ████████████ ████████████████████████████████. *Id.* ¶32-34.

Qualcomm's two declarants purport to identify eight witnesses with relevant knowledge (five in NDCA and three in SDCA). Dkt. 45-15 ¶¶8, 11; Dkt. 45-16 ¶¶6, 9. The declarants also identify twelve Qualcomm employees whose names appear on public documents cited in Red Rock's contentions (six in NDCA and in six SDCA). Dkt. 45-15 ¶25; Dkt. 45-16 ¶23. Qualcomm does not say these latter twelve witnesses are relevant. Red Rock stipulates it will not call these twelve people as witnesses; Red Rock will prove its infringement case through source code and other evidence. Harris ¶21.

Qualcomm has at least seven relevant technical witnesses, all located in either WDTX or nearby Richardson. Murias ¶¶99-137. Mr. Murias also identified a relevant ████████████████ ████████████████████████████ and a relevant ████████████████████████ ████████████████████. *Id.* ¶¶84-98. Red Rock's complaint and contentions explicitly accuse the digital signal processor on the Qualcomm chips as an infringing feature. Ex. 71 at 36-37, 39-40, 46 (identifying the "DSP" as satisfying the "processor" limitations). In the accused products, ████████ ████████████████████████████████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY

███████████████████████████████████████████████████████████

█████████████████████████████████████████ Murias ¶¶87-88.

Qualcomm's declarant stated the █████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ Dkt. 45-15 at ¶18. And it misses the point—t████

███████████████████████████████████████████████████████

████████████ Murias ¶¶87-89. Not surprisingly, when █████████████████████

████████████████████████       ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ Ex. 24 ¶¶9, 13. Qualcomm later claimed "those responses were in

error," stating these people have ████████████████████████████████

██████████████████ *Id.* ¶13; Ex. 25 ¶8. But Qualcomm also admitted these two people work on

████████████████████████████████████████ *Id.* The ████████████████

███████████████████████████████████████████ identified in Red Rock's

infringement contentions. Murias ¶130. Mr. Murias concludes that ████████████████████  ████

████████████████████████████ *Id.* ¶¶126-137.

Qualcomm's ████████████████ is also relevant. Qualcomm admits that the ██████████ works

on ██████████████████████ for the accused products. Ex. 25 ¶18. Qualcomm did not investigate

what █████████████ is designed by the ████████████. Ex. 1 at 125:9-127:20. But Ron Murias

did investigate. He reviewed Qualcomm's ████████████████████ and found that the ████ contain

a number of specifically accused features (listed *supra* at I.B.). Murias ¶¶25-29. Accordingly, members

of the ████████████████████████████████████████████ have knowledge

relating to ████████████████ for the accused products. *Id.* ¶¶92-114.

Qualcomm employees in or near WDTX also have knowledge of EVM, including the 5G and

Wi-Fi 6 standard's EVM requirements that speak to the value of the '313 Patented invention. ████

████████████ of Richardson, TX ████████████████████████████████████████.

Ex. 24 ¶9. Her online bio says she works on "RF Cal[ibration]" and has a "[s]trong understanding of

CONFIDENTIAL – ATTORNEYS' EYES ONLY

***3GPP specifications*** [*i.e.,* the 5G standard]." Murias ¶121. Qualcomm's declarant stated that she ███ ████████████████████████████████████████████████████████████████ Ex. 25 ¶8. Throughput is directly related to EVM and "I-Q calibration directly impacts transceiver throughput." Murias ¶124. Similarly, Qualcomm Texas employees ████████████████ also have deep technical knowledge of these topics, as Mr. Murias shows. *Id.* ¶¶104-111, 115-125.

Three Qualcomm witnesses in or near WDTX have knowledge relevant to damages. Weinstein ¶¶73-77. Qualcomm admits two of them are relevant: ██████████████████████████ ███████████████████████████████████████████████████████████ Ex. 24 ¶19. A Qualcomm executive tweeted: "Tricia Dugan is joining us at #teamqualcomm as the ***Vice President of Strategic Accounts***. With Tricia's experience, we look forward to ***driving Snapdragon & 5G*** together with our partners to new heights." Ex. 77. Similarly, Tom Leach is "Senior Manager, Business Development" who manages "all sales efforts with National Accounts to grow [5G] market share." Weinstein ¶76. Mr. Weinstein explains these witnesses are relevant to damages topics and also identifies the specific *Georgia*-Pacific factors that each witness is knowledgeable about. *Id.* ¶73-77.

John Cafarella, Red Rock's only member and the '313 Patent's inventor, is a willing witness who lives in Florida. Ex. 8 at 8:22-24. It is more convenient for him to attend trial in WDTX than NDCA given the shorter distance to Texas and his attorneys presence here. *Id.* at 131:15-132:10. Red Rock will call Dr. Cafarella at trial. Harris ¶22. Jeffrey Fischer, a Red Rock consultant, is a willing witness who lives in San Diego, CA. Fischer ¶¶2-3. As stated in his declaration, it is more convenient for him to attend trial in WDTX than NDCA. *Id.* ¶¶5-7. Red Rock will call Mr. Fischer at trial. Harris ¶23.

Mr. Weinstein performed an economic analysis to determine the cost of witness travel and attendance at trial. Weinstein ¶¶85-19. For SDCA witnesses, he finds that the cost of trial attendance is similar in WDTX ($931) and NDCA ($996). *Id.* ¶88. This result is consistent with the Federal Circuit's guidance. *In re Pandora Media, LLC*, No. 2021-172, 2021 U.S. App. LEXIS 30963, at *15 (Fed. Cir. Oct. 13, 2021) ("We have rejected the rigid application of the 100-mile rule in cases in which the witnesses will be required to travel a significant distance no matter where they testify."). Because SDCA witnesses will incur comparable costs in NDCA and WDTX, SDCA witnesses do not meaningfully impact this factor.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

### B. Public Interest Factors

#### 1. The Administrative Difficulties Flowing from Court Congestion

Mr. Weinstein analyzed trial data to determine the extent of court congestion. His conclusions are stark—WDTX generally, and the Waco division specifically, are far less congested than NDCA. Since 2018, there have been eleven patent trials in Waco and just three patent trials in NDCA. Weinstein ¶¶95-96. For patent trials since 2018, the average time to trial in Waco is 7 months faster than in NDCA. Weinstein ¶¶95-97 (under 23 months in Waco and over 30 months in NDCA). Expanding the scope to all of WDTX and all civil matters filed from 2018-2021, the average time to trial in WDTX is 6.7 months faster than in NDCA. *Id.* at ¶104 (22.9 months in WDTX and 29.6 months in NDCA). Mr. Weinstein also considered patent cases pending as of March 16, 2020 (the start of COVID-19). He found that the average age of those pending cases is 31 months in Waco and 45 months in NDCA. *Id.* at ¶106.

Defendants argue this factor is "neutral" because their misleading data supposedly indicates the time to trial in NDCA and WDTX is "comparable." Mot. at 13 and Ex. 11. Defendants' data has three serious problems. *First*, it includes the *Regents* case, which was a **plant patent** case not subject to the **utility** patent local rules. N.D. Cal. P.L.R. 1-2. *Second*, the data uses the date of **transfer**, not the date of filing, for time to trial in *Opticurrent*. With these flaws corrected, Defendants' dataset would show a median NDCA time to trial of **35.0 months** (not 17.3 months) and a mean of **32.5 months** versus a median WDTX time to trial of 24.0 months. Third, Defendants omitted the *Cyntec* case that went to trial one day before its motion was filed. When *Cyntec* is considered, the median NDCA time to trial is **38.9 months** and the mean is **35.1 months**. Properly constituted, Defendants' dataset shows that WDTX is faster than NDCA by **11-15 months**. Harris ¶¶8-18 (showing calculations).

Mr. Weinstein analyzed the economic consequences of this delay. First, Mr. Weinstein used his prior royalty rate from the *Samsung* case and estimates of Apple's iPhone sales to arrive at a conservative estimate of damages owed by Apple for only iPhones, which exceed ▮▮▮▮▮▮. Weinstein ¶102. Adding Qualcomm's damages would likely double this number. Second, using an accepted methodology from one of his prior economic studies concerning judicial delay, he determined the economic opportunity cost to the parties attributable to a trial delay of seven months—a conservative estimate. In

CONFIDENTIAL – ATTORNEYS' EYES ONLY

this case, considering only ▮▮▮▮▮▮▮▮▮▮▮ the opportunity cost is at least ▮▮▮▮. *Id.* at ¶¶98-102 (about $1M opportunity cost for each $10M in controversy). Third, Mr. Weinstein considered the AIPLA's 2021 survey, which estimates that costs for patent infringement cases with more than $25 million in controversy are approximately $10 million higher in NDCA than Texas. *Id.* at ¶107.

This analysis shows that court congestion strongly disfavors transfer, which would result in negative economic impacts on all parties. It also is important that the costs associated with seven months of delay (many millions of dollars), greatly exceed the costs associated with the other factors, such as travel.

### 2. The Local Interest in Having Localized Interests Decided at Home

This factor concerns the "significant connections between a particular venue and the events that gave rise to a suit." *In re Juniper Networks, Inc.*, No. 2021-160, 2021 U.S. App. LEXIS 29036, at *12-13 (Fed. Cir. Sep. 24, 2021). The facts that gave rise to this suit are closely tied to WDTX. The majority of identified party witnesses who designed and developed the accused features are located in WDTX, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The employees in Defendants' massive Austin campuses are also engaged in ▮▮▮▮▮▮▮▮▮▮ accused products in WDTX. Likewise, ▮▮ manufactures hardware for the accused products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Murias ¶41. Defendants receive ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Weinstein ¶¶112-14. Tax breaks are not given heavy weight, so they do not change this factor. *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020).

This factor disfavors transfer. The specific facts of this case have less connection to NDCA than WDTX. To be sure, Defendants also have campuses and operations in NDCA. But Apple claims it does not know how the accused products perform I-Q calibration, and Apple has identified no California witnesses with knowledge of accused features. The majority of witnesses who ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are in WDTX, with only a handful in NDCA, and the rest in SDCA. Even their Motion hedges: "development of the Accused Functionality related to the Accused Qualcomm Products occurs in NDCA *or San Diego*." Mot. at 14.

### III.    Conclusion

Defendants have not shown that the Northern District of California is "clearly more convenient."

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

DATED: January 14, 2022

*/s/ Alden G. Harris*
Leslie V. Payne (Texas Bar No. 00784736)
lpayne@hpcllp.com
Michael F. Heim (Texas Bar No. 09380923)
mheim@hpcllp.com
Alden G. Harris (Texas Bar No. 24083138)
aharris@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr. (Texas Bar No. 00794818)
jw@wsfirm.com
Claire Abernathy Henry (Texas Bar No. 24053063)
claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone (903) 757-6400
Facsimile (903) 757-2323

S. Calvin Capshaw (Texas Bar No. 03783900)
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux (TX Bar No. 05770585)
ederieux@capshawlaw.com
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770

**ATTORNEYS FOR RED ROCK ANALYTICS, LLC**

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record are being served with a copy of the

foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5 on January 14, 2022.

/s/ Alden G. Harris
Alden G. Harris